Reinhold WEISE, Plaintiff-Appellee,

v.

UNITED STATES of America,
Defendant-Appellant.

No. 83–1344.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 4, 1983.

Decided Jan. 5, 1984.

Robert T. Gruenberg, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for defendant-appellant.

Steven K. Jambois, Chicago, Ill., for plaintiff-appellee.

Before BAUER and ESCHBACH, Circuit Judges, and CAMPBELL, Senior District Judge.*

ESCHBACH, Circuit Judge.

Reinhold Weise brought a medical malpractice action against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680. The district court entered judgment for Weise. On appeal, the government presents three challenges to the judgment. First, it claims that, in entering judgment for Weise, the district court ignored its own finding that Weise had not met his burden of persuasion. Next, it contends that, in finding that Weise had established the prevailing standard of medical care, the district court improperly applied Illinois law. Finally, the government urges that the district court's use of medical literature violated Federal Rule of Evidence 803(18), and constituted reversible error.

For the reasons expressed below, we affirm the judgment of the district court.

* The Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, sitting by designation.

## I.

Reinhold Weise slipped on the ice outside his home and injured his knee. He was admitted to a Veteran's Administration hospital, where the injury was misdiagnosed as a sprain. Weise had, in fact, fractured his knee. The government admitted that the misdiagnosis was negligent, but argued that the treatment Weise received was among those medically accepted for a fracture of the type Weise suffered.

The bench trial in this case was brief, consisting of the testimony of Weise and two orthopedic surgeons. Dr. Robert Miller, Weise's expert witness, testified that the preferable course of treatment for Weise's fracture would have been open reduction (surgery), although non-operative closed reduction was an acceptable alternative treatment.[1] Dr. Miller also testified that both the treatment Weise received at the V.A. hospital, and the results he obtained, were medically unacceptable. Dr. Mitchell Sheinkop, the government's expert, testified that the treatment Weise received, which consisted of bed rest with initial immobilization of the knee followed within twelve days by gradual weight bearing, was among the medically accepted treatments for a knee fracture.

Several articles from medical journals and excerpts from standard medical texts were relied on by the experts during both direct and cross-examination. At the close of the evidence, counsel for the government offered to provide the trial judge with copies of the medical literature used during trial. When Weise's counsel indicated that he had no objection, the attorney for the government gave the judge copies of all the articles and texts, inadvertently including one which had never been referred to by either expert. At that time, the judge indicated that he would take the materials home with him, and render his decision the following morning.

1. Closed reduction is a procedure that involves manipulation of the bone. Anesthesia must be used during the procedure.

The next morning, after stating that he had taken the materials home, the judge expressed concern that the articles had not been properly identified as exhibits. Assisted by the government attorney, the judge assigned each piece of literature a number as "defendant's exhibits in evidence." The judge then announced his findings of fact and conclusions of law. He found that Weise had been negligently treated and had as a result suffered a permanent disability. Judgment was entered in favor of Weise for $80,000.

## II.

### A. *Burden of Persuasion*

■ Initially, the government contends that it was entitled to judgment as a matter of law because the trial judge found that the plaintiff had not carried his burden of persuasion. The record reveals that the trial judge indicated, perhaps out of the frustration attendant upon listening to doctors espouse extreme views in support of their clients, that he had doubts about the credibility of both of the experts. The judge stated:

> I have expressed somewhat a lack of confidence in Doctor Miller in certain aspects, and a lack of confidence in Doctor Sheinkop in certain incidents, and in those circumstances one might say, "Well, it's a stand off, and because the Plaintiff has the burden of persuasion, the Plaintiff loses."

The government reads this statement as a finding that the plaintiff failed to carry his burden of proof. We disagree, because a reading of the judge's findings in their entirety makes it amply clear that the trial judge found Dr. Miller's representation of the applicable standard of care corroborated, and his testimony concerning Weise's injuries and their cause supported by the medical literature.

### B. *Application of Illinois Law*

■ The controlling substantive law in an action alleging medical malpractice under the FTCA is the law of the state where the negligent act occurs—in this case, Illinois. The government makes three related arguments under Illinois law.

■ First, it cites *Walski v. Tiesenga,* 72 Ill.2d 249, 21 Ill.Dec. 201, 381 N.E.2d 279 (1978), for the proposition that the requisite standard of medical care must be established through expert testimony. As a corollary to this argument, the government states that as Illinois does not permit the admission of medical treatises as substantive evidence, a decision based solely on medical literature is improper.

In *Walski,* the Illinois Supreme Court reaffirmed its earlier decisions holding that a plaintiff in a medical malpractice action must establish the requisite standard of care through the testimony of experts. In doing so, it rejected the plaintiff's contention that medical treatises relied on in cross-examination were sufficient to establish this standard. In *Walski,* however, the plaintiff presented no expert testimony which established a generally accepted standard of care. Rather, the plaintiff's expert only testified concerning his personal preference.

We are not faced with the situation in *Walski.* Dr. Miller testified that the treatment Weise received was "a deviation of [sic] regular medical standards," and that this deviation was the cause of Weise's present condition. He further testified that while his personal preference would have been to perform open reduction (surgery), closed reduction was also a medically acceptable alternative. Finally, he affirmatively stated that the treatment Weise received varied substantially from generally accepted medical procedures. While expressing some reservations about Dr. Miller's insistence that he would have operated on an eighty-two year old man, the trial judge found Dr. Miller's testimony about the applicable standard of care corroborated by the medical literature. He further found no support whatsoever for the course of treatment advocated by Dr. Sheinkop. The record shows that the medical literature was not used to establish the standard of care, but was used merely to test the

credibility of the experts. Therefore, we find that the plaintiff did establish the standard of care through expert testimony, and that the trial judge did not base his decision solely on the medical literature.

■ Finally, the government claims that instead of determining whether the treatment afforded Weise was within the range of acceptable treatments, the trial judge tested the treatment given against the best possible treatment available. The government bases its assumption on the district court's statement that the preferred treatment for a fracture of the type Weise suffered was closed reduction. However, the court pointed out that Dr. Miller had testified that there were alternative treatment methods available, and that the one Weise received was not among them. The judge further found that Dr. Sheinkop's testimony claiming that the treatment afforded Weise was medically acceptable was unsupported by either Dr. Miller or by the literature presented by the government at the end of trial. Thus, the government's claim that the trial judge posited an ideal treatment and found for Weise because that treatment had not been provided is not supported by the record. The trial judge clearly found that the treatment Weise received was not consistent with the prevailing standard of medical care.

## C. The Use of Medical Literature under the Federal Rules of Evidence

The government's primary contention on appeal is that under Fed.R.Evid. 803(18), the trial judge erred in considering in its entirety the medical literature provided by the government at the end of trial. It further contends that the use of the medical materials, to which no objection was made at trial, constituted plain error requiring reversal. We cannot agree.

As we noted above, the government's counsel offered *all* of the literature to the trial judge without limitation. This material included an article that had not been used by either expert. The judge indicated that he would take the materials home that night. The following morning, the judge stated:

> [L]ast evening, I took your *exhibits* home, but I'm a little worried about marking the exhibits in this case, and I think in order that the record is correct, we should put some stickers on some of these [articles and excerpts].

(Emphasis added). The judge, aided by the government's counsel, then marked each piece of literature with an exhibit number as "defendant's exhibits in evidence." The government did not object to this procedure. During his oral findings, the judge referred to the literature, noting that "[it] was offered in evidence at the close of the hearing . . . and this morning we made our record with respect to exhibit numbers." The judge then discussed the admissibility of the treatises under Fed.R.Evid. 803(18). At no time did the government object.

On appeal, the government contends that Rule 803(18) does not contemplate the admission of learned treatises as exhibits in evidence. It also argues that Rule 803(18) precludes the use of such treatises in the absence of expert testimony.

■ In light of the government's failure to present those objections to the trial court despite repeated opportunities to do so, and considering the fact that the government itself provided the materials to the judge without limitation, we hold that the government's objections come too late. In *Wesley-Jessen v. Bausch & Lomb, Inc.,* 698 F.2d 862 (7th Cir.1983), we held that, where no objection was made when certain treatises were offered to the trial court, any objection to the court's use of the materials was waived. This appeal presents an even stronger case for the application of waiver principles than did *Wesley-Jessen.* The government not only failed to object to the court's use of the literature but, unlike the appellant in *Wesley-Jessen,* actually provided the district court with the treatises for its consideration. As this court has noted before, "It is well-settled law that a party cannot complain of errors which it has committed, invited, induced the court to make, or to which it consented." *International*

*Travelers Cheque Co. v. BankAmerica Corp.,* 660 F.2d 215, 224 (7th Cir.1981). *See generally Pielet v. Pielet,* 686 F.2d 1210, 1215 (7th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 733, 74 L.Ed.2d 957 (1983). The government invited the trial judge to use the materials without limiting his consideration in any way. It cannot now be heard to complain of the use to which those materials were put.

Finally, the government contends that the district court based its finding for Weise solely on the medical treatises in violation of Rule 803(18)'s prohibition on the admission of such treatises as substantive evidence, and that the judge committed plain error in so doing. We need not consider this claim, since it is clear from our analysis in Part B that the district court did not rely solely on the medical literature in finding for Weise.

### III.

For the reasons expressed above, the judgment of the district court is affirmed.