**Melissa Suzanne BROWN, a minor by her next friend, Martin BROWN, Martin Brown and Susan Brown, Appellants,**

**v.**

**SYNTEX LABORATORIES, INC. and Syntex Corporation, Appellees.**

**No. 84–2018.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 16, 1984.

Decided Feb. 26, 1985.

Rehearing and Rehearing En Banc Denied April 10, 1985.

David A. Taylor, Kansas City, Mo., for appellants.

Thomas C. Walsh, St. Louis, Mo., for appellees.

Before ARNOLD, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Melissa Suzanne Brown and her parents appeal an order of the district court [1] entering judgment against them notwithstanding the verdict they obtained against Syntex Laboratories, Inc.[2] The Browns had claimed Melissa's speech and memory were impaired by her use of a chloride-deficient baby formula, Neo-Mull-Soy, manufactured by Syntex. After a jury awarded Melissa $350,000 and her parents $65,000, the district court granted Syntex Laboratories a new trial. Upon the Browns' application for a writ of mandamus, a panel of this court ordered that the district court enter judgment notwithstanding the verdict, thus making an appeal to this court possible. In its second order, the district court accordingly entered judgment and also conditionally granted a new trial. It is this order from which the Browns appeal. We reverse the compelled entry of judgment not-

---

1. The Honorable Joseph E. Stevens, Jr., United States District Judge for the Western District of Missouri.

2. At the conclusion of all the evidence, the district court directed a verdict for the second defendant, Syntex Corporation.

withstanding the verdict[3] but affirm the conditional grant of a new trial.

Melissa Suzanne Brown was born January 2, 1979. Three days later she was started on the baby formula Neo-Mull-Soy, her primary source of nutrition for the first six months of her life. Since age two she has been receiving treatment for various speech and memory disabilities. The Browns sued Syntex Laboratories and Syntex Corporation, claiming that Melissa's use of the Neo-Mull-Soy, which was deficient in chloride, caused her speech and memory problems. The case was tried before a jury in September 1983, and most of the issues in this appeal surround the testimony there of Dr. Alan Organ, a pediatrician who testified that the Neo-Mull-Soy caused Melissa's condition.[4] The district court initially denied a motion in limine to exclude Dr. Organ's testimony. However, when Dr. Organ took the stand, after an extensive voir dire, the district court found his testimony was lacking in foundation, was contrary to his earlier deposition testimony, and was therefore inadmissible. Nonetheless, when Dr. Organ was recalled to the stand two days later, after he stated that his review of medical journal articles supported the conclusion he was prepared to give, his testimony was admitted.

After the jury returned the verdicts in favor of Melissa and her parents, Syntex filed motions for judgment notwithstanding the verdict and for a new trial because the verdict was against the weight of the evidence. The district court, ruling that a submissible case had been made, first denied the motion for judgment notwithstanding the verdict. It then considered the testimony of Dr. Organ, finding that his credibility was weakened by "substantial inconsistencies between his testimony before and at trial and simply within his testimony at trial" and that "while Organ may some day be proved correct, the weight of the evidence suggests that such a conclusion cannot be made to a *reasonable* (believable) medical certainty absent further scientific research." *Brown v. Syntex Laboratories*, No. 81–0256–CV–W–8, slip op. at 6, 10 (W.D.Mo. July 12, 1984). It therefore determined that the verdict was against the weight of the evidence and granted the motion for a new trial.

The Browns then filed a petition for a writ of mandamus, arguing that the practical effect of the district court's order was to grant a judgment notwithstanding the verdict. A panel of this court ordered the district court to enter judgment notwithstanding the verdict, thereby making an immediate appeal possible. *In re Brown*, 745 F.2d 63 (8th Cir.1984). The district court promptly complied, entering the judgment for defendants, conditionally granting a new trial, and again explaining the basis for its ruling.[5] On this appeal, the Browns

3. By reversing the judgment notwithstanding the verdict we are not in disagreement or conflict with the earlier order of a panel of this court that judgment be entered. The order served only to make the case appealable and did not pass on its merits, as we now are required to do.

4. Dr. Organ testified that in his opinion Melissa's speech and memory problems were caused by the "ingestion as a sole nutrition, or nearly sole nutrition of chloride-deficient Neo-Mull-Soy formula in the first six and a half months of her life."

5. This order contained the following findings:
1. After voir dire conducted of the witness Organ by both parties and out of the hearing of the jury, the court, on September 13, 1983, found, on the basis of the record then made, that he was not qualified to testify as to causa-

tion in this case. *See* Transcript of Dr. Alan Organ's testimony, pp. 2–55.
2. Two days later, in response to questions from plaintiff's attorney within the hearing of the jury, Dr. Organ expanded the purported basis of his testimony, including citation of and reference to journal articles on the effects of Neo Mull Soy and his own published articles on one-celled organisms. Absent further questioning by defendant and relying on Organ's testimony that the cited authorities supported his conclusion, the court decided that a proper foundation had been laid to treat him as an "expert" and to allow him to state his opinion as to the ultimate conclusion. Transcript of Dr. Alan Organ's testimony, pp. 216–277.
3. After reading the transcript of Dr. Organ's entire testimony, after examining the purported basis of his testimony and after reviewing the testimony of other doctors, the

challenge both the grant of judgment notwithstanding the verdict and the conditional grant of a new trial.

## I.

We first determine if the district court's order entering judgment notwithstanding the verdict was proper. Such an order may be entered if the court determines that the evidence is not sufficient to create an issue of fact for the jury. On numerous occasions we have articulated the standard for evaluating such sufficiency: all the evidence must point one way and be susceptible of no reasonable inferences sustaining the position of the non-moving party. *SCNO Barge Lines, Inc. v. Anderson Clayton & Co.*, 745 F.2d 1188, 1192 (8th Cir.1984); *Dace v. ACF Industries, Inc.*, 722 F.2d 374, 375 (8th Cir.1983), *reh'g denied*, 728 F.2d 976 (8th Cir.1984) (per curiam).[6] Since Dr. Organ testified that the use of Neo-Mull-Soy caused Melissa's condition, there was support at trial for the Browns' position. Thus, if Dr. Organ's testimony was properly admitted, the standard was not met, and the judgment notwithstanding the verdict was improperly issued.

The order for j.n.o.v. was issued, of course, at the direction of a panel of this court, which determined that "the practical effect of * * * [the district court's first order for a new trial] was to grant a judgment notwithstanding the verdict." *In re Brown*, slip op. at 2. The panel's order directing j.n.o.v. likely was based on the district court's statement in its first order that "while Organ may some day be proved correct, the weight of the evidence suggests that such a conclusion cannot be made to a *reasonable* (believable) medical certainty absent further scientific research." [7] *Brown*, slip op. at 10 (July 12, 1984). If such a conclusion could not be made, it follows that Dr. Organ's testimony was inadmissible and, since he was the sole expert to testify to the requisite causation, that no case existed to be submitted to the jury. Thus, if such a conclusion could not be made, the district court would have had no choice but to grant a j.n.o.v.

The district court, however, made the statement while determining if a new trial should be granted because the verdict was against the weight of the evidence. In *Firemen's Fund Insurance Co. v. Aalco Wrecking Co.*, 466 F.2d 179, 186–87 (8th Cir.1972), *cert. denied*, 410 U.S. 930, 93 S.Ct. 1371, 35 L.Ed.2d 592 (1973), this court cautioned that such motions should be granted only where there is a miscarriage of justice. The district court here recog-

court, on July 12, 1984, determined that Organ's qualifications were marginal, and that he had sifted through the evidence, rejecting some laboratory data normally relied upon by medical experts in the field, accepting instead the contradictory assertions of plaintiff Melissa Brown's mother. In addition, while Organ purportedly relied upon journal articles in forming his opinion "to a medical certainty," a review of his own testimony during the September 13, 1984, voir dire revealed that Dr. Organ's conclusions, by his own admissions, were not those drawn by the authors of the articles or, for that matter, any other experts in the field. Transcript of Organ's testimony, pp. 3, 6, 10, 14, 38, 48. This court, therefore, viewed his qualifications, as well as the basis of his testimony as weakened.

*Brown v. Syntex Laboratories*, No. 81–0256–CV–W–8, slip op. at 3–4 (W.D.Mo. August 31, 1984).

6. The standard is the same as that for a directed verdict and for either a j.n.o.v. or a directed verdict is the same under both federal and Mis-

souri law. *SCNO Barge Lines*, 745 F.2d at 1192; *Crues v. KFC Corp.*, 729 F.2d 1145, 1148 (8th Cir.1984).

7. In coming to this conclusion, the district court noted that:

Dr. Organ also had to establish that Neo Mull Soy could cause speech and memory disorders. Because Dr. Organ conducted no tests and no research in this area, he had to rely on scientific journals. However, the scientific research had not established a causal connection between the Neo Mull Soy caused chloride deficiency syndrome and speech or memory disorders in any child. In fact, those persons who researched the effects of Neo Mull Soy consistently concluded that more studies were required. The mere fact that a percentage of children with dietary chloride deficiency syndrome had disorders was an insufficient basis, absent further research or statistically significant correlations, for a scientific conclusion.

*Brown*, slip op. at 9–10 (July 12, 1984).

nized that such a standard governed its considerations and performed its evaluation of the credibility of the evidence "in the interest of justice." *Brown*, slip op. at 3 (July 12, 1984). It was in this context that the court found that the *weight* of the evidence *suggested* the conclusion could not be made to a reasonable medical certainty. The statement must be confined to this context, for in the portion of the original order discussing issuance of a j.n.o.v., the district court clearly stated:

> In this case, a doctor testified to a medical certainty that, in his opinion, Neo Mull Soy caused Melissa's speech and memory disorders. Without assessing the credibility of this witness and the weight of the evidence which contradicts his conclusions, the court cannot find that there was "but one conclusion as to the verdict that reasonable men could have reached" and, therefore cannot enter judgment in favor of defendant.

*Brown*, slip op. at 2 (July 12, 1984).

■ Thus, the compelled order granting j.n.o.v. was not justified on the merits and the court's reasoning in its first order was correct, unless the court abused its discretion in admitting the testimony of Dr. Organ or in denying Syntex's post-trial motion that the testimony be ruled inadmissible. We are not prepared, however, to find such an abuse of discretion.

"[T]he trial judge has broad discretion in the matter of the admission or exclusion of expert evidence, and his action is to be sustained unless *manifestly* erroneous." *Salem v. United States Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962) (emphasis added), *quoted in United States v. Vik*, 655 F.2d 878, 880 (8th Cir.

1981). To disturb a ruling on such admissibility, there must be a *"clear* showing of abuse of discretion" as, for example, where "a seemingly qualified expert * * * exceed[s] the permissible bounds of opinion testimony and enter[s] into the realm of *utter speculation and conjecture."* Jones v. Goodlove, 334 F.2d 90, 94 (8th Cir.1964) (emphasis added).

In urging that Dr. Organ's testimony entered this realm, Syntex relies heavily on *Atchison, Topeka & Santa Fe Railway Co. v. Hamilton Brothers, Inc.*, 192 F.2d 817 (8th Cir.1951), where the court found an expert's opinion not to rise to the level of substantial evidence and therefore reversed and ordered entry of a directed verdict.[8] However, in the present case, unlike that in *Hamilton Brothers*, there is in evidence no gross, obvious, physical near-impossibility that contradicts Dr. Organ's testimony. Dr. Organ's opinion was based on the fact of Melissa's consumption of the Neo-Mull-Soy low in chloride, an electrolyte analysis of her blood that showed "low normal" chloride, the presence of developmental delay noticed in other chloride-deficient children, the absence of other factors that would have accounted for Melissa's speech and memory problems, and a review of the relevant literature that suggested such problems were associated with chloride-deficient children. While this testimony was not without its weaknesses, we cannot conclude that it was so utterly speculative that the district court abused its discretion in admitting it. Therefore, we must reverse the compelled order of the district court granting judgment notwithstanding the verdict.

---

8. The case involved the flooding of farm land; Hamilton Brothers argued the railroad's bridge caused brush to collect in a channel and thus caused an overflow, while the railroad claimed a growth of willows in the channel above the bridge caused the problem. Although an expert engineer testified that the bridge caused the problem, the court found that since

> the levee was neither broken nor overtopped below the willows and * * * the level of the high water below the willows was six feet lower than it was at the break in the levee

above them, it is *scarcely possible even to conjecture* that the bridge contributed to the breaking and overflow of the levee upstream from the willows. It *seems impossible* that if he knew these facts the engineer Myers could have reached the conclusion that the retardation of the water at the bridge contributed to the overlow. It *appears to be impossible* that the sole proximate cause of the overflow was caused by anything other than the willows. 192 F.2d at 822 (emphasis added).

## II.

The Browns argue that the district court abused its discretion in granting in its second order a conditional new trial because the verdict was against the weight of the evidence. Rule 50(c) of the Federal Rules of Civil Procedure governs the Browns' right to appeal this grant. As the advisory committee notes to the rule make clear, if an appellate court reverses a j.n.o.v. it may, "in an appropriate case * * * reverse the conditional grant of a new trial." Since an earlier order of a panel of this court has brought this case to us and the parties have fully briefed and argued the issue, we believe it is appropriate for us to consider if the order for a new trial should be reversed. To so dispose of the issue now should foreclose further appellate activity and conserve judicial resources.[9]

A new trial may be granted "for any of the reasons for which new trials have heretofore been granted in actions at law." Fed.R.Civ.P. 59. We have long recognized one of these reasons to be that the verdict is against the weight of the evidence. In determining if a verdict is against the weight of the evidence, the trial court may conduct its own evaluation of the evidence. It may "weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *Ryan v. McDonough Power Equipment, Inc.*, 734 F.2d 385, 387 (8th Cir.1984). Great deference is to be accorded the trial judge's decision in this determination. *See, e.g., Aimor Electric Works, Ltd. v. Omaha National Bank*, 727 F.2d 688, 692 (8th Cir.1984); *Burnett v. Lloyds of London*, 710 F.2d 488, 489–90 (8th Cir.1983); *Minnesota Mutual Life Insurance Co. v. Wright*, 312 F.2d 655, 659–60 (8th Cir.1963). As the Supreme Court has noted, "[t]he authority to grant a new trial * * * is confided almost entirely to the exercise of discretion on the part of the trial court." *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36, 101 S.Ct. 188, 191, 66 L.Ed.2d 193 (1980).

In this case, in its first order the district court discussed at length its reasons for finding the verdict against the weight of the evidence, including its belief that research has not "established" a link between Neo-Mull-Soy and speech or memory disorders, that Dr. Organ's qualifications were "marginal," and that Dr. Organ's testimony contained inconsistencies and unsupported assertions. It noted that Melissa's laboratory tests never indicated a chloride deficiency, that certain symptoms of the chloride deficient syndrome were not present in Melissa, and that Dr. Organ's conclusions that Melissa was lethargic, constipated, and anorexic were inconsistent with medical records. It found that Dr. Organ took "several unscientific analytical shortcuts," engaged in circular reasoning, and ignored "data relied upon by experts in the field" in reaching his conclusion. *Brown*, slip op. at 8–9 (July 12, 1984). It further indicated that Dr. Organ dismissed too quickly the possibilities that Melissa's problems were caused by pyloric stenosis or were inherited. Thus, it found that Dr. Organ had "sift[ed] through evidence ignoring some of it and accepting only that which support[ed] his conclusion." *Brown*, slip op. at 12 (July 12, 1984). These findings are within the guidelines we have established. We do not see in the clearly articulated reasons of the district court the "strong showing of abuse," *Lincoln Carpet Mills, Inc. v. Singer Co.*, 549 F.2d 80, 81 (8th Cir.1977), that would necessitate our reversal of the order for a new trial.

The Browns also argue, however, that the district court's order for a new trial

---

**9.** The Browns also argue that the district court's conditional grant of a new trial in its second order must be considered a nullity, since it exceeds the order of a panel of this court. Rule 50(c) of the Federal Rules of Civil Procedures provides that when a motion for judgment notwithstanding the verdict is granted "the court *shall* also rule on the motion for a new trial" (emphasis added). We find nothing in the order of this court that indicates the district court was not to proceed according to the Federal Rules of Civil Procedure. The Browns cite no authority for this position. Certainly to foreclose consideration of this portion of the district court's order would be contrary to both the letter and spirit of Rule 50(c).

was based on an independent, after-the-fact review of medical literature never in evidence at the trial. They state the review was "anathema to the judicial process" in that the district court became "a super juror with the self appointed power to comprehend, without misconstruing, the medical texts presumably incomprehensible to the untrained juror." We note, however, that after the conclusion of the trial the Browns without objection submitted the medical articles to the district court at its request. Their objections now come too late. In *Weise v. United States*, 724 F.2d 587 (7th Cir.1984), in a similar situation, the government was found to have waived any objection to the court's use of medical literature after a trial, where it "not only failed to object to the court's use of the literature but * * * actually provided the district court with the treatises for its considerations." *Id.* at 590. "[A] party cannot complain of errors which it has committed, invited, induced the court to make, or to which it consented." *International Travelers Cheque Co. v. BankAmerica Corp.*, 660 F.2d 215, 224 (7th Cir.1981). In addition, it is highly questionable that the district court's order was, in fact, "based" on its review of the medical articles. As the court itself pointed out in its second order, "these articles were not necessary to a determination that the verdict was against the weight of the evidence. The facts upon which this court based that finding were admitted by Organ or testified to by other experts." *Brown*, slip op. at 4 n. 1 (Aug. 16, 1984). We conclude that the district court did not abuse its discretion in its review of the evidence of the case and its subsequent grant of a new trial.

### III.

The Browns also argue on appeal that the district court erred in directing a verdict at trial for Syntex Corporation. They claim the evidence showed that even though Neo-Mull-Soy was made by Syntex Laboratories, only Syntex Corporation could deal with the FDA, that a letter regarding the case was written on Syntex Labs' stationary but sent in a Syntex Corporation envelope, that during the recall of Neo-Mull-Soy the contact person was an officer at Syntex Corporation, and that Syntex Corporation's annual report lists pending actions against the "company."

The Browns, therefore, do not argue that Syntex Corporation itself manufactured, sold, or distributed Neo-Mull-Soy but, rather, that "the company and its subsidiaries [are] so intertwined that liability cannot be separated between the two." It is undisputed that Syntex Laboratories and Syntex Corporation are separate corporate entities. In Missouri, a court may "brush aside or disregard the separate legal entity of * * * two corporations" and thereby pierce the corporate veil only where "the separate legal entities of the corporations * * * are used to perpetrate fraud or injustice or to accomplish an unlawful purpose." *Smith v. City of Lee's Summit*, 450 S.W.2d 485, 489 (Mo.Ct.App.1970); *see also Fairbanks v. Chambers*, 665 S.W.2d 33, 37–38 (Mo.Ct. App.1984); Carpenter & Vick, *Recent Developments in Missouri: Corporate Law—A Continuing Evolution*, 48 UMKC L.Rev. 545, 565–70 (1980). The evidence the Browns cite does not suggest that such improper motives or purposes were present. Thus, the district court did not err in directing a verdict for Syntex Corporation.

Finally, the Browns assert the district court erred in dismissing their claim for punitive damages. As we are affirming the order for a new trial, we need not reach this issue, which properly may be considered below if it arises at the new trial.

We reverse the compelled order of the district court granting judgment notwithstanding the verdict and affirm its grant of a new trial on the ground that the verdict was against the weight of the evidence.