916 F.2d 715
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Violet JENKINS, Plaintiff-Appellee,
v.
ELECTRO-MED INDUSTRIES, INC., Defendant-Appellant.
 No. 89-2859.
 United States Court of Appeals, Seventh Circuit.
 Argued Sept. 11, 1990.
Decided Oct. 16, 1990.
 
 Before WOOD, JR., POSNER and FLAUM, Circuit Judges.
 
 ORDER
 
 1
 This appeal arises from a jury verdict in favor of plaintiff-appellee Violet Jenkins in a products liability diversity action. The jury awarded Jenkins $300,000 in damages. Defendant-appellant Electro-Med Industries, Inc. ("Electro-Med") filed a motion for new trial which was denied by the district court and Electro-Med now appeals from the district court's denial of its motion. A copy of the Order of the district court is attached and made a part hereof. We add only a few additional comments. This court has jurisdiction over this appeal under 28 U.S.C. Sec. 1291, and we now affirm.
 
 
 2
 Electro-Med manufactures and sells a device known as an electronic galvanic stimulator ("EGS"). This machine is used in certain types of medical treatment and physical therapy. The EGS emits short pulses of electricity through electrodes applied to the part of the body being treated. Jenkins injured her foot in 1978 while at work. As part of the therapy prescribed for her injury, she received a series of treatments with an EGS machine. Jenkins claimed that the EGS machine manufactured by Electro-Med had a design defect which allowed an excessive amount of electricity to be administered to her at her final treatment session resulting in a severe electrical burn to her lower leg.[1]
 
 
 3
 Electro-Med first argues that Jenkins failed to sustain her burden of proof and therefore the jury verdict is unsupported by the evidence. Electro-Med points to deficiencies in Jenkins' expert testimony as the basis for its challenge to the verdict. Electro-Med did not dispute that Jenkins received injuries, but disputed whether those injuries were caused by the EGS machine. The crux of Electro-Med's own expert testimony was that it was virtually impossible for the EGS machine to produce the electrical output necessary to cause the type of injury received by Jenkins.
 
 
 4
 Lee Rose, an electrical engineer, testified for Jenkins that the EGS machine could produce an electrical burn and his opinion was based upon his knowledge of the voltage capabilities of the machine and an inspection of a schematic drawing. A second expert for Jenkins, Dr. Rosenberg, a physician, testified that based upon her review of the medical records Jenkins had suffered an electrical burn. Jenkins testified that during the administration of her final treatment on the EGS machine she felt a burning sensation and requested that the technician remove it immediately.
 
 
 5
 The trial judge found that the basis of Dr. Rosenberg's opinion was suspect due to her unfamiliarity with the EGS machine and her refusal to read an article submitted to her which was contrary to Jenkins' position. However, in denying the motion for new trial the district court held that Mr. Rose's opinion provided a sufficient basis for the jury verdict. This case was aptly characterized by the district court as simply a "battle of the experts" in which the jury must determine credibility. The jury apparently perceived Jenkins' experts as the more credible and rendered their verdict accordingly. It is not the function of this court to reweigh or reevaluate the evidence presented to the factfinder. Siddigi v. Leak, 880 F.2d 904, 908 (7th Cir.1989).
 
 
 6
 At trial, Electro-Med did not raise the issue of the qualifications of Jenkins' expert witnesses or challenge the admissibility of Jenkin's expert testimony. The main contention of Electro-Med is that Jenkins' experts employed faulty reasoning in reaching their conclusions. Electro-Med asserts that it is within the province of this court to assume the role of factfinder and reweigh the expert testimony adduced at trial.
 
 
 7
 A jury verdict will not be set aside unless it is against the manifest weight of the evidence. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940). The district court's denial of Electro-Med's motion for a new trial demands an exacting standard of review by this court. Fleming v. County of Kane, State of Ill., 898 F.2d 553 (7th Cir.1990). The denial of a motion for new trial will not be reviewed by this court "except upon exceptional circumstances showing a clear abuse of discretion." Cygnar v. City of Chicago, 865 F.2d 827 (7th Cir.1989) (quoting General Foam Fabricators v. Tenneco Chemicals, Inc., 695 F.2d 281, 288 (7th Cir.1982)). Based on the facts of this case and in spite of the weaknesses of Jenkins' case, we do not believe that the trial judge abused his discretion in finding that there was a sufficient foundation supporting the testimony of Jenkins' expert witnesses.
 
 
 8
 Electro-Med also argues on appeal that the trial court erred in failing to proffer one of its proposed jury instructions.[2] We will not reverse a decision to deny a particular jury instruction if the instruction given adequately presents the objecting party's theory. McDonald v. Sandvik Process Systems, Inc., 870 F.2d 389, 395 (7th Cir.1989). It is our duty to determine "in a common sense manner ... whether the correct message was conveyed to the jury reasonably well." Wilk v. American Medical Ass'n, 719 F.2d 207, 218 (7th Cir.1983), cert. denied, 467 U.S. 1210 (1984). The refusal to give a particular instruction is not considered reversible error unless, in light of all the instructions, the evidence, and the arguments, it appears that the jury was misled or misapprehended the issues before them. Simmons, Inc. v. Pinkerton's, Inc., 762 F.2d 591 (7th Cir.1985).
 
 
 9
 At trial, Electro-Med objected to the failure of the judge to give this proposed instruction to the jury:
 
 
 10
 The jury may disregard the testimony of a witness if the testimony is opposed to recognized laws of nature, or if the testimony is clearly in conflict with principles established by the laws of science. Such evidence is of no probative value.
 
 
 11
 Defendant's proposed jury instruction no. 22. The trial court gave the following instruction (court's instruction no. 2) regarding the weight to be given expert testimony:
 
 
 12
 If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinion are not sound, or that the opinion is outweighed by other evidence, then you may disregard the opinion entirely.
 
 
 13
 Electro-Med attempts to characterize the opinions of Jenkins' experts as contrary to the laws of nature and principles established by the laws of science. However, this characterization is not supported by the evidence. Mr. Rose, Jenkins' expert, testified that based upon his knowledge of the electrical output capabilities of the EGS machine and his inspection of a schematic drawing of it, he believed the machine could produce an electrical burn. Evidence was not presented by Electro-Med that Mr. Rose's opinion was contrary to the laws of nature, but only presented the opinion of its own expert that the EGS machine was virtually incapable of producing an electrical burn.
 
 
 14
 The court's instruction to the jury regarding the weight to be given expert testimony adequately addressed Electro-Med's theory of the case. Under the instruction given, if the jury found the underlying reasoning supporting the expert's opinion to be unsound, then the opinion could be disregarded by the jury. We therefore find that the refusal of the trial judge to give Electro-Med's proposed jury instruction did not constitute reversible error.
 
 
 15
 For the foregoing reasons, the judgment of the district court is
 
 
 16
 AFFIRMED.
 
 ATTACHMENT
 
 17
 UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF INDIANA
 
 HAMMOND DIVISION
 VIOLET JENKINS, Plaintiff
 
 18
 v.
 
 ELECTRO-MED INDUSTRIES, INC., Defendant
 Civil No. H 81-409
 
 19
 July 26, 1989.
 
 ORDER
 
 20
 MOODY, District Judge.
 
 
 21
 This matter is before the court on a Motion for New Trial, filed on May 22, 1989 by defendant Electro-Med Industries, Inc. Plaintiff Violet Jenkins responded in opposition to the motion on July 14, 1989, and defendant submitted citations to additional authority on July 14, 1989. For the reasons explained below, defendant's motion is DENIED.
 
 Background
 
 22
 In August of 1978, plaintiff Violet Jenkins injured her foot while at work at a McDonald's restaurant. Included in the treatments and therapy she received for her injury was a series of treatments with an Electro Galvanic Stimulator ("EGS") machine, administered at Our Lady of Mercy Hospital in Dyer, Indiana. The EGS machine, which was manufactured by defendant Electro-Med Industries, Inc. ("Electro-Med"), delivers a series of rapid bursts of electricity into the part of the human body being treated. Plaintiff claims that, due to a defective design of that EGS machine, she received an excessive dose of electricity at her final EGS session, resulting in severe electrical burns to her lower leg. Plaintiff alleges that the machine had been left on too high a setting when it was connected to her leg and then activated. Plaintiff claims that Electro-Med should have built into the machine a device that automatically reset the controls to zero between patients so that a subsequent patient requiring a lesser dose of electricity will not inadvertently be given the higher dose required by a previous patient.
 
 
 23
 Defendant Electro-Med does not dispute that plaintiff was treated by its machine or that she has suffered injuries. Defendant asserts, however, that plaintiff's injuries were inflicted by a source other than its machine, because its machine has an electrical output that is far too low to cause electrical burns under any but the most far-fetched circumstances. Defendant's expert explained that if the machine were set at its maximum output level--indeed, at an output actually above the maximum possible for the machine--it would take approximately 438 days of continuous treatment before an electrical burn could occur.
 
 
 24
 The jury apparently did not believe defendant's expert because it arrived at a verdict for plaintiff, awarding her $300,000.00 in damages. Defendant now asks the court to set aside the verdict, vacate the judgment, and grant defendant a new trial on the grounds that:
 
 
 25
 1. The plaintiff has failed to provide sufficient expert testimony to establish that the product was defective;
 
 
 26
 2. The plaintiff has failed to establish that any alleged defect was the proximate cause of plaintiff's alleged injuries and damage; and
 
 
 27
 3. The verdict is against the weight of the evidence.
 
 Discussion
 
 28
 The parties agree that the court has the power to set aside a verdict and grant a new trial on the grounds that the verdict was against the manifest weight of the evidence. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940); Brown by Brown v. Syntex Laboratories, Inc., 755 F.2d 668, 673 (8th Cir.1985). The power to set aside a verdict and grant a new trial under such circumstances "is confided almost entirely to the exercise of discretion on the part of the trial court" Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980); Cygnar v. City of Chicago, 865 F.2d 827, 835 (7th Cir.1989).
 
 
 29
 Defendant's challenges to the verdict center around the testimony of the three expert witnesses in this case. Defendant offered the testimony of one Dr. Joel Myklebust, a biomedical engineer, who had tested the electrical output of the machine and performed various calculations that indicated it would have been virtually impossible for the machine to have caused electrical burns, even at maximum output. Plaintiff, on the other hand, presented two experts: The first, Lee Rose, an electrical engineer, testified that 500 volts (the maximum voltage setting of the machine) at one "micro amp" for ten seconds could produce an electrical burn. The second, Dr. Linda Rosenberg, a physician, testified that according to the medical records she had been given, she has concluded that plaintiff's injuries were the result of an electrical burn.
 
 
 30
 Defendant argues that neither of plaintiff's experts had ever examined or tested the EGS machine or knew what the machine's electrical output was, that Mr. Rose did not know what the minimum electrical current to produce an electrical burn was, and that Dr. Rosenberg had not even bothered reading certain materials submitted to her that indicated the machine at issue could not produce electrical burns. Defendant points out that the court may weigh the evidence and examine the expert testimony in considering whether a new trial is warranted. See Brown v. Brown v. Syntex Laboratories, Inc., 755 F.2d at 673. Defendant asserts that in this case there is no scientific basis for the opinions of plaintiff's experts, so that "the only scientific evidence submitted to the court was that of Dr. Myklebust."
 
 
 31
 The court must disagree with defendant. First of all, while it is true that neither of plaintiff's experts had examined the machine in question, Mr. Rose testified that he had examined an electrical schematic of the machine and read the specifications for it. As an electrical engineer, Mr. Rose should be considered qualified to determine from those documents what the electrical output of the machine was. Furthermore, defendant's expert Dr. Myklebust testified that he had tested the output of the machine, and nowhere did he indicate that the particular machine in question was malfunctioning so as to produce a different electrical output than the "specs" indicated.
 
 
 32
 As for defendant's claim that Mr. Rose did not even know the minimum electrical current to produce a burn, the court notes that Mr. Rose stated that the figure varied with the individual circumstances, and that the general range could be looked up in certain tables which he did not have with him. Although he admitted he had not consulted the tables in conjunction with this case, he stated unequivocally in response to defense counsel's inquiry that 500 volts at one micro amp for ten seconds could produce a burn. The court finds that there is certainly some room to question the basis of Mr. Rose's assertion that such an electrical current could produce a burn when he admitted he had not consulted the tables setting out the ranges, but the court recognizes that Mr. Rose's experience with the tables in the past could well have left him unsure of the precise minimum figure, while leaving him quite certain that the minimum was at least somewhere below the current figures in question. The court finds that, given Mr. Rose's education and experience in the field of electronics, there is at least enough basis for his opinion that the jury should be entitled to decide for itself whether his conclusions or Dr. Myleburst's conclusions were the more credible. In other words, the court finds this is simply a "battle of the experts," in which the jury must decide the victor. See Ferebee v. Chevron Chemical Co., 736 F.2d 1529, 1535 (D.C.Cir.) cert. denied, 469 U.S. 1062 (1984).
 
 
 33
 Defendant's challenges to Dr. Rosenberg's testimony focused on two main issues: (1) Dr. Rosenberg was not personally familiar with the EGS machine or its output; and (2) Dr. Rosenberg had spent a mere 1 1/2 hours reading the materials submitted to her, missing completely an article which indicated EGS machines such as the one at issue cannot cause electrical burns.
 
 
 34
 The court agrees with defendant that Dr. Rosenberg's admitted unfamiliarity with the machine or its output demonstrates that there is an insufficient foundation for the opinions she rendered asserting the EGS machine was the source of plaintiff's injuries. Similarly, Dr. Rosenberg's failure to read the materials submitted to her that were contrary to her position demonstrates her opinions on the capability of the machine to cause the injuries may be suspect. See Brown by Brown v. Syntex Laboratories, Inc., 755 F.2d at 673-74 (new trial properly granted when district court found plaintiff's expert had "sift[ed] through evidence ignoring some of it and accepting only that which support[ed] his conclusion."). If Dr. Rosenberg's conclusions had been the only evidence upon which plaintiff relied to demonstrate the EGS machine was capable of causing (and did indeed cause) electrical burns, the court would be hard pressed to find a reason not to grant defendant's motion for a new trial. However, as noted above, Mr. Rose's conclusions on that same issue did have at least a minimally acceptable foundation, and provide sufficient basis for the jury's ultimate verdict, despite the deficiencies of Dr. Rosenberg's evidence. Defendant does not challenge in this motion Dr. Rosenberg's conclusion, based on her review of the EMG and arteriogram test results, that plaintiff's injuries are consistent with electrical burn.
 
 
 35
 In sum, while the evidence and opinions presented by plaintiff's experts are not overwhelmingly persuasive, and it is possible that another jury may have found defendant's expert and other evidence to have been more persuasive than plaintiff's, the court cannot find that the verdict in this case is against the manifest weight of the evidence so as to justify the granting of a new trial. While it is admittedly a close question in this case, the court hereby DENIES defendant's Motion for New Trial.
 
 
 
 [1]
 As a result of Jenkins' injury, she was hospitalized frequently over a period of three years and underwent various surgical procedures including a skin graft and plastic surgery
 
 
 [2]
 Electro-Med objected to the refusal of the trial judge to give its proposed instruction at trial, however, it did not raise this issue in its motion for new trial and therefore the refusal to give the jury instruction is not addressed by the district court order