902 F.2d 664
 Maxine H. EHRHARDT, Appellee,
v.
PENN MUTUAL LIFE INSURANCE CO., Appellant,
v.
David G. DEMPSEY and Patrick O. Boyle as Trustees of the
Eugene J. Ehrhardt, Children's Trust, and David G.
Dempsey as Trustee of the Eugene J.
Ehrhardt living trust.
 No. 89-1385.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 18, 1990.
Decided May 2, 1990.
Rehearing and Rehearing En Banc Denied June 14, 1990.
 
 P. Terence Crebs, St. Louis, Mo., for appellant.
 Alan J. Agathen, Clayton, Mo., for appellee.
 Before BOWMAN and WOLLMAN, Circuit Judges, and ROSS, Senior Circuit Judge.
 ROSS, Senior Circuit Judge.
 
 
 1
 Penn Mutual Life Insurance Co. (Penn Mutual) appeals from the district court's order entering judgment upon a jury's verdict in favor of Maxine Ehrhardt (Maxine), and third party defendants David Dempsey and Patrick Boyle (trustees) in Maxine's diversity action to recover insurance proceeds. We reverse and remand for a new trial.
 
 
 2
 Maxine was a licensed life insurance agent in Missouri working for Penn Mutual. She sold a $200,000 life insurance policy to her husband, Eugene Ehrhardt (Eugene), on July 26, 1982. Maxine was the original owner of the policy. The beneficiaries of the policy were designated as follows: three-fourths of the proceeds to go equally to Eugene's three daughters from a previous marriage; one-fourth to go to Maxine. Thereafter, Maxine twice redesignated herself the owner and redesignated the original beneficiaries.
 
 
 3
 After Eugene was diagnosed as suffering from leukemia, his behavior became erratic. Fearing disinheritance and mounting medical bills, Maxine requested a change-of-beneficiary form from Penn Mutual. Penn Mutual sent a cover letter[1] and multipurpose blank form 6955. Part I of the form vested all privileges of ownership in the "INSURED" unless otherwise indicated "below." Maxine left this part blank. She filled in Part III by redesignating herself sole primary beneficiary and her two daughters contingent beneficiaries. She signed the bottom of the form under "policyowner" on June 3, 1985. Penn Mutual then changed ownership of the policy to Eugene.
 
 
 4
 In February 1986, Eugene summoned his attorney, David Dempsey, to his hospital room regarding an estate plan. Maxine was present at the meeting in which a plan placing the policy proceeds into trust for Eugene's daughters was discussed. Eugene acknowledged that Maxine owned the policy. Eugene decided that he wanted three-fourths of the policy proceeds to go into the children's trust and one-fourth into a living trust for Maxine's benefit. During creation of the trust documents, Dempsey's associate, Robert Kahn, discovered from Penn Mutual that Eugene was the record owner of the policy. Accordingly, on February 14, 1986, Eugene designated the two trusts as beneficiaries of the policy insuring his life. Maxine was present and did not object.
 
 
 5
 In June 1986, Kahn learned that the Ehrhardts had a prenuptial agreement. In order to avoid conflict with the trusts, a postnuptial agreement was drafted. The postnuptial agreement recognized the living trust as beneficiary of one-fourth of the policy proceeds and stated that Eugene "shall not alter or amend such designation of beneficiary." Both Eugene and Maxine signed the agreement.
 
 
 6
 When Eugene died, Penn Mutual paid the policy proceeds ($215,317.08) to the trustees: $161,360 for the children's trust; $53,957.08 for the living trust. Maxine then sued Penn Mutual alleging: Count I--breach of contract; Count II--vexatious refusal to pay; and Count III--negligence (in connection with Penn Mutual's treatment of form 6955). Penn Mutual filed a third party complaint against the two trustees. Count III was submitted to the jury which found Maxine twenty percent negligent and Penn Mutual eighty percent negligent and assessed damages against Penn Mutual at $172,253.67 (eighty percent of $215,317.08). The jury returned a verdict against Penn Mutual on its third party complaint.
 
 
 7
 Penn Mutual appeals, raising the issues of whether the district court erred in: (1) determining that form 6955 was ambiguous; (2) denying Penn Mutual's motion for judgment notwithstanding the verdict because giving the form without adequate instructions could not constitute negligence; (3) preventing Penn Mutual from presenting its waiver or estoppel defense relating to the postnuptial agreement; (4) refusing to give Penn Mutual's requested Instruction A on the postnuptial agreement; (5) giving Maxine's three-prong disjunctive verdict director, Instruction No. 12; (6) failing to declare a mistrial after giving additional instructions to the jury in response to a question; (7) refusing a remittitur; (8) refusing to allow Penn Mutual to refresh witness David Dempsey's recollection with an estate tax return; and (9) instructing the jury on Penn Mutual's third party complaint. We will discuss each of these issues in turn.
 
 
 8
 Penn Mutual contests the admission of alleged parol evidence to vary the terms of the form, i.e., Maxine's testimony that she never intended to transfer ownership of the policy. Maxine argues that because the form is not reasonably calculated to draw one's attention to the automatic change of ownership in Part I, it is ambiguous, especially in view of the accompanying letter sent by Penn Mutual.
 
 
 9
 An ambiguity exists when a contract is reasonably susceptible of more than one construction. Sun Oil Co. v. Vickers Ref. Co., 414 F.2d 383, 386 (8th Cir.1969). Whether form 6955 is ambiguous is a question of law to be decided by the trial court in the first instance. Motor Carriers Council v. Local Union 600, 486 F.2d 650, 653 (8th Cir.1973).
 
 
 10
 At trial Maxine contended that the word "below" used in the form could have referred to the form's signature block where she signed as policyowner. Yet immediately beneath the word "below" in Part I are two blank lines on which to place the names of the primary or contingent owner(s). Immediately beneath that is a phrase which begins "If a new owner has been designated above...." (emphasis added). The parts of the form are separated by adequate blank spacing and blocks.
 
 
 11
 The district court refused to grant Penn Mutual's motion to dismiss Count III of the complaint for failure to state a claim, finding the form ambiguous as a matter of law. The court found nothing on the face of the form to advise an owner that she is required to redesignate herself as the owner each time a beneficiary change is made. It further refused to grant a judgment notwithstanding the verdict on this point. In a diversity case, this court defers to the local district court's interpretation of state law unless it is " 'fundamentally deficient in analysis or otherwise lacking in reasoned authority.' " Barber-Greene Co. v. National City Bank, 816 F.2d 1267, 1270 (8th Cir.1987) (quoting Dabney v. Montgomery Ward & Co., 761 F.2d 494, 499 (8th Cir.1985)). In light of the deference accorded the district court, we agree that the form, when considered with the cover letter, may be reasonably susceptible of two interpretations. See J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club, 491 S.W.2d 261, 264 (Mo.1973) (en banc) (writings in addition to contract to be considered in determining ambiguity).
 
 
 12
 Second, Penn Mutual contends that the court erred in denying its motion for a judgment notwithstanding the verdict because merely providing the form could not constitute a basis for a negligence action. Penn Mutual did not, however, object to the availability of a negligence remedy during the trial. Maxine had alleged Penn Mutual's negligence in providing the form without adequate instruction. Penn Mutual points out that Maxine failed to read the entire form or request assistance, yet Maxine asserts she had the false impression that the form was a change-of-beneficiary form.[2]
 
 
 13
 Penn Mutual further argues that Maxine did not justifiably rely on anything represented by Penn Mutual, an essential element of negligent misrepresentation. We disagree. She may have relied on the cover letter sent with the form, together with the allegedly ambiguous form itself. We note, however, that Maxine had more than ten years of experience in the insurance business.
 
 
 14
 This court will not overrule the district court's ruling on a motion for judgment notwithstanding the verdict if the evidence is susceptible of any reasonable inference sustaining the prevailing party's position. Brown by Brown v. Syntex Laboratories, Inc., 755 F.2d 668, 671 (8th Cir.1985). The district court did not err in failing to enter a judgment notwithstanding the verdict because Maxine's claim appears cognizable in tort. Because Missouri is a comparative fault state, however, the jury was entitled to fix negligence apportionately. We therefore decline to reverse on Penn Mutual's second issue.
 
 
 15
 As its third and fourth points, Penn Mutual asserts it should have been allowed to argue waiver and estoppel. By the August 4, 1986 postnuptial agreement, Maxine consented to receipt of twenty-five percent of the policy proceeds being placed in a living trust for her benefit; she also consented to redesignation of the children's trust. Penn Mutual stresses that by reason of the judgment, Maxine is to receive eighty percent of the policy proceeds in addition to twenty-five percent of the living trust, effectively one hundred five percent of the policy proceeds. In addition, the children's trust would receive seventy-five percent of the policy proceeds, making Penn Mutual liable for one hundred eighty percent of the policy proceeds. The district court refused to allow Penn Mutual to submit its waiver or estoppel defenses in the instructions, mention them in closing argument, or grant its motion for a judgment notwithstanding the verdict. Penn Mutual believes the agreement was relevant to damages and to Maxine's credibility.
 
 
 16
 Maxine responds that the agreement could not have barred her claim as a matter of law, due to Missouri's comparative fault system. She did not recall reading or signing the document which recognized that Eugene Ehrhardt had "designated the Trust as beneficiary of one-fourth ( 1/4) of the proceeds of the Penn Mutual Life Insurance Company policy." Maxine acknowledges, however, that had "designated" meant that Eugene took the formal steps to modify Penn Mutual's beneficiary records, she would perhaps be barred by the agreement. She thought, however, that she still had to "sign over" the proceeds. Yet the agreement provides in pertinent part:
 
 
 17
 WHEREAS, EUGENE J. EHRHARDT has established a revocable living trust (the "Trust") dated February 13, 1986, as amended on February 14, 1986, and as further amended on April 4, 1986; and
 
 
 18
 WHEREAS, MAXINE H. EHRHARDT has been consulted and has participated in and approved of the drafting of the Trust, as amended; and
 
 
 19
 WHEREAS, it is the intent of the parties that the terms of the Trust be controlling in respect of the rights of MAXINE H. EHRHARDT as surviving spouse in the event she survives EUGENE J. EHRHARDT; and
 
 
 20
 . . . . .
 
 
 21
 2. EUGENE J. EHRHARDT has designated the Trust as beneficiary of one-fourth ( 1/4) of the proceeds of the Penn Mutual Life Insurance Company policy 7 206 905, insuring the life of EUGENE J. EHRHARDT. The parties have been advised by the Company that as of February 13, 1986, the death benefit payable on said policy (exclusive of outstanding loans) was $211,681.00. EUGENE J. EHRHARDT shall not alter or amend such designation of beneficiary at any time prior to his death provided he is survived by MAXINE H. EHRHARDT. (emphasis added).
 
 
 22
 It seems to us that Maxine may arguably be barred by the agreement from asserting her instant claim. Assuming the validity of the agreement, she may have waived her rights under the policy.
 
 
 23
 Waiver is essentially a matter of intention and may be shown by acts and conduct and sometimes by nonaction, but for such to be construed as waivers, they must be manifestly consistent with, and indicative of, an intention to waive or to relinquish the right that no other reasonable explanation is possible; and waiver must be determined by the facts and circumstances of each case and will not be presumed in the absence of evidence clearly tending to show it.
 
 
 24
 Concrete Eng'g Co. v. Grande Bldg. Co., 230 Mo.App. 443, 463-64, 86 S.W.2d 595, 608 (1935); Mutual Life Ins. Co. v. Tuemler, 251 S.W. 727, 729 (Mo.App.1923) (interpleader action in which former wife, having accepted fruits of agreement upon divorce, was barred from claiming part of ex-husband's insurance policy proceeds). We hold that because the postnuptial agreement was relevant and material to Maxine's damage claim, Penn Mutual should be allowed to submit evidence concerning the agreement and argue the effect of the agreement to the jury. Based on Maxine's own testimony that she signed the agreement thinking she still had to "sign over" the proceeds, it could be argued that she knew the significance of the agreement, did not tell Eugene or his attorneys of her claim to ownership, and thereby kept the attorneys from getting the matter straightened out at that time. We reverse and remand for a new trial on this point.
 
 
 25
 Penn Mutual's Instruction A on its affirmative defense based on the postnuptial agreement, which was refused, provides:
 
 
 26
 Your verdict must be for defendant Penn Mutual on plaintiff's negligence claim if you believe,
 
 
 27
 First, plaintiff entered into the Agreement dated August 4, 1986, and
 
 
 28
 Second, that by entering into the Agreement dated August 4, 1986, plaintiff Maxine Ehrhardt acquiesced in the beneficiary designation of Eugene J. Ehrhardt for payment of one-quarter of the proceeds of policy number 7206905 into the Eugene J. Ehrhardt Living Trust, and
 
 
 29
 Third, defendant Penn Mutual paid one-quarter of the proceeds of policy number 7206905 to the Eugene J. Ehrhardt Living Trust following the death of Eugene J. Ehrhardt, and
 
 
 30
 Fourth, plaintiff Maxine Ehrhardt has received benefits as a result of such payment.
 
 
 31
 The district court refused the instruction because it was not in Missouri Approved Instructions (MAI). Maxine argues that the instruction fails to include the "reliance" element of estoppel. See Central Microfilm Serv. Corp. v. Basic/Four Corp., 688 F.2d 1206, 1218 (8th Cir.1982) (three elements of estoppel include act or statement inconsistent with right later asserted, reliance on act or statement, and injury), cert. denied, 459 U.S. 1204, 103 S.Ct. 1191, 75 L.Ed.2d 436 (1983).
 
 
 32
 Although Penn Mutual did not know about the postnuptial agreement, it indirectly relied on it through Eugene Ehrhardt who, with Maxine's knowledge, had already put the dispositive scheme into effect. He had earlier made Penn Mutual aware of the trust redesignations; Penn Mutual changed the policy and paid benefits pursuant to his direction. The instruction clearly stated that it must be shown that Penn Mutual paid the proceeds to Maxine's trust pursuant to the beneficiary designation of the policy. We are persuaded that the charge as a whole was a fair and adequate statement of the relevant Missouri law on estoppel. The reliance element is implicit as the "facts giving rise to the estoppel were expressly submitted under the instructions." Id.
 
 
 33
 Fifth, Penn Mutual challenges Maxine's three-prong verdict director, Instruction No. 12.[3] Penn Mutual urges that there is an insufficient basis for the first prong, i.e., its negligence in providing the form. Having determined that Maxine's claim could be cognizable in tort, we see no error in this instruction.
 
 
 34
 After approximately five hours of deliberation, the jury expressed difficulty in understanding the verdict form; it asked if it was to insert a dollar amount of damages on page one of the form. The court explained with an example.[4] Penn Mutual sought a mistrial for the reason that the reinstruction violated Instruction No. 15.[5]
 
 
 35
 Although the court's oral explanatory instructions did not reemphasize that the jury was first to assess fault and then determine damage, we hold that its reinstruction substantially explained the substance of Instruction No. 15. The court did not abuse its discretion. See Chohlis v. Cessna Aircraft Co., 760 F.2d 901, 904 (8th Cir.1985) (abuse of broad discretion standard, entire charge fairly and adequately contained applicable law). This sixth argument is without substance.
 
 
 36
 Next, Penn Mutual argues that the damages awarded to Maxine should have been the cash value of the policy on the date ownership was transferred from Maxine to Eugene ($7,669.10), or on the date he changed beneficiaries of the policy ($6,924.41). Penn Mutual analogizes Maxine's negligence claim to an action for conversion in which damages are the fair value at the time of conversion. We fail to see a logical reason to fix damages at other than the face amount of the policy. If the alleged negligence had not occurred, the result would have been that Maxine retained ownership and control over the policy on the books of Penn Mutual. Further, because Penn Mutual failed to object to the damage instruction given to the jury, we find no error. See Fed.R.Civ.P. 51. Thus, the district court did not abuse its discretion in leaving the verdict undisturbed under the above challenge.
 
 
 37
 As its eighth assignment of error, Penn Mutual asserts that the district court refused to allow it to refresh the recollection of witness David Dempsey with a federal estate tax return. Penn Mutual sought to introduce evidence that Eugene's estate claimed a marital deduction of nearly $900,000. The district court did not allow it because the return had not been designated as an exhibit.
 
 
 38
 Maxine responds that witness Dempsey's review of the document would not have provided him an "independent recollection" of its contents. In any event, Maxine believes it immaterial that she received some $900,000 in trust from her husband's estate because it had no relevance to the policy. In the alternative, Maxine argues that failure to allow the document under Fed.R.Evid. 612 was harmless error. We agree that if the district court's refusal to allow use of the tax return was error, it was harmless. The jury had received information about the considerable size of Eugene's estate from Dempsey's earlier testimony and from other sources. See Branizza v. Greyhound Corp., 394 F.2d 33, 36 (5th Cir.1968) (no prejudice if contents for which document offered admitted into evidence by other means).
 
 
 39
 Finally, Penn Mutual challenges the district court's failure to give its requested Instruction B regarding the third party complaint which provides:
 
 
 40
 Your verdict must be for Penn Mutual on its Third Party complaint against the trustees if you believe Penn Mutual paid the proceeds of policy number 7206905 to the trustees pursuant to the beneficiary designation of Eugene J. Ehrhardt.
 
 
 41
 Instead, the court gave Instruction No. 18 submitted by the trustees which provides:
 
 
 42
 On Penn Mutual's claim against the trustees, your verdict must be for the trustees and against Penn Mutual if you believe that the payment was neither induced nor accompanied by inequitable conduct on the part of Eugene J. Ehrhardt or the trustees.[6]
 
 
 43
 Penn Mutual believes this issue is governed by Glover v. Metropolitan Life Ins. Co., 664 F.2d 1101 (8th Cir.1981), in which this court held that an insurer was entitled to restitution from a decedent's second wife, of proceeds mistakenly paid to her instead of to a first wife. The trustees respond that because Maxine's action was for negligence and not breach of contract, Penn Mutual's third party complaint is moot. We disagree.
 
 
 44
 According to the jury's verdict, Maxine would be unjustly enriched from receipt of benefits under the living trust and from her judgment on the policy. We find this issue bothersome and the result "intolerably unfair to [the insurer]," Glover, supra, 664 F.2d at 1105, forcing it to pay twice. As in Glover, equity in the case at hand favors a holding for Penn Mutual; a holding otherwise would grant Maxine a windfall. It would be unjust for the trustees to retain the proceeds in this case and for that reason we hold that the district court committed error in giving Instruction 18. Further, the record reflects that the funds in the hands of the trustees of the children's trust remain intact. Accordingly, the judgment for the trustees on the third party claim is reversed and remanded with instructions to formulate an instruction in keeping with the views expressed above.
 
 
 45
 In sum, the district court's judgment is reversed and the case remanded for a new trial with instructions that Penn Mutual be allowed to submit and argue its waiver and estoppel defense. Having remanded the case in chief, that portion of the district court's order regarding the third party complaint is also reversed and remanded.
 
 
 
 [1]
 The letter provided:
 Please find enclosed the necessary form to change the beneficiay [sic] on the above mentioned policy.
 Please insert the name, relationship and date of birth of the proposed beneficiary. Please sign the form at the X mark and date it. Please return in the enclosed self-addressed envelope.
 If you have any questions, please do not hesitate to call.
 
 
 [2]
 Although not raised below, Maxine cites cases in which insurance agents have been held liable for the tort of negligent misrepresentation of the content of insurance policies. The plaintiffs' failure to read their policies did not bar their claims. Penn Mutual relies on Missouri contract cases in which plaintiffs' failure to read foreclosed their claims. These cases, however, predate the date on which Missouri abrogated its contributory negligence system for a comparative fault rule. See Gustafson v. Benda, 661 S.W.2d 11 (Mo.1983) (en banc)
 
 
 [3]
 Instruction No. 12 provided:
 In your verdict on Plaintiff Maxine Ehrhardt's claim against Defendant Penn Mutual Life Insurance Company based on negligence, you must assess a percentage of fault to Defendant whether or not Plaintiff was partly at fault if you believe:
 First, Defendant provided Plaintiff a Form 6955,
 Defendant provided Plaintiff a Form 6955 and failed to provide her adequate instruction on filling it out for the purpose of changing beneficiary,
 Defendant provided Plaintiff a Form 6955 and provided improper instruction on filling it out for the purpose of changing beneficiary, and
 Second, Defendant was negligent in any of the foregoing, and
 Third, as a direct result of such negligence, Plaintiff sustained damage, unless you believe that Plaintiff is not entitled to recover by reason of Instruction No. 13.
 
 
 [4]
 The court stated:
 If and as you have any percentages, then after you put the total, let's just for an example say it was a hundred dollars, just to have an example, and it was 75-25, the Court would then do the appropriate arithmetic, supra p. 666.
 All right. I think I misstated your percentages. As to the Defendant, the percentage of fault can be zero to one hundred, for the Plaintiff, it can be zero to one hundred, but the total is going to be zero or one hundred, when you get to the bottom. Those two figures above will total a hundred percent you got or for zero, zero, zero, whatever the total they total. But they'll [sic] either going to go with zero or a hundred percent. But the dollar amount that is to be the actual amount you find damages suffered, and any amendment of that is left to the Court according to, supra p. 666.
 (Transcript, vol. III at 78-79).
 
 
 [5]
 Instruction No. 15 provided:
 If you assess a percentage of fault to defendant, then, disregarding any fault on the part of plaintiff, you must determine the total amount of plaintiff's damages to be such sum as will fairly and justly compensate plaintiff for any damages you believe she sustained as a direct result of the occurrence(s) mentioned in the evidence. You must state such total amount of plaintiff's damages in your verdict.
 In determining the total amount of plaintiff's damages, you must not reduce such damages by any percentage of fault you may assess to plaintiff. The court will compute plaintiff's recovery by reducing the amount you find as plaintiff's total damages by any percentage of fault you assess to plaintiff.
 
 
 [6]
 The court also gave Penn Mutual's Instruction No. 17 which provides:
 On Penn Mutual's claim against the trustees, your verdict must be for Penn Mutual and against the trustees if you believe: First, Penn Mutual paid the insurance proceeds to the trustees as beneficiaries of the insurance policy, without full knowledge of all the facts pertaining to the payment of the claim; and Second, the payment was either induced or accompanied by inequitable conduct on the part of Eugene J. Ehrhardt or the trustees.