984 F.2d 244
 142 L.R.R.M. (BNA) 2414, 124 Lab.Cas. P 10,517
 Dan L. BLOUNT; Edna M. Bond; Reginald G. Bowers; Glenda
L. Boyer; Robert Dwight Chitwood; David M. Cornish;
Thomas B. Darr; James E. Fears; Ann A. Foster; Brenda D.
Diedrich; Paul E. Gagnepian, Jr.; Sherri L. Hastings;
Richard P. Henderson, Jr.; Yvonne Hopkins; Daniel L.
Keely; Rick D. Kindrick; Donald L. Kohlfeld; Ray P.
Kosulandich; Randall A. Krez; Helen Landrum; Debra E.
Lawrence; Emilda P. Martinez; David E. Neff; Stephen C.
Nichols; Vivian R. Powell; Debra A. Reed; Edna R.
Renfroe; Audrey Smith; Thelma Smith; Mary L. Todd; Dan
L. Abernathy; David J. Abling; Mary E. Acord; Ruth D.
Adams; Mary A. Alfred; Anthony Amato, Jr.; Christine
Beckum; Teresa K. Belmar; R.J. Bingaman; Rose M. Blue;
Michael G. Brown; Randle G. Buff; Patricia A. Burns; V.L.
Cannon; Vernell Crockett; Linda S. Elfgen; Steven M.
Fisher; David F. Ford; Ernest W. Gielow; Patricia A.
Gordon; William M. Grant, III; David A. Green; Edna M.
Greer; Patricia A. Hanner; James Paul Harris; C. Sims
High; William D. Hoffmeister; Raymond Hollins; James L.
Holman, Jr.; Annie M. Hoskins; Michael L. Howard; D.V.
Jackson; Raymond H. Johnson; Jimmie R. Jones; Alice M.
Joyner; John E. Kroll, Jr.; Daniel J. Lacey; R.B. Lee;
James W. Macon; Daniel Louis Marks; Thomas P. Marks; Mary
A. Mueller; Donald L. Nelson; Kenneth Newland; Eugene G.
Overstreet; Ralph L. Parris; Raymond L. Pashia; Donna
Marie Pointer; Mildred D. Poole; Stuart P. Potts; Danny
J. Pyatt; Berl R. Reading; M. Robinson; Ronald E. Sack;
C.A. Schodrowski; Viola M. Schoenfeld; Angeline A.
Sciotto; Tom E. Shuey; George Smith; Mary L. Stewart;
M.V. Stogsdill; Kenneth L. Stroud; Paula Walker; Nancy
Weir; Marvin C. Wesley; Richard C. Westrich; M.E. White;
Russell P. White, Appellants,
v.
LOCAL UNION 25, INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF
AMERICA, UAW; General Motors
Corporation, Appellees.
 No. 92-1493.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 9, 1992.
Decided Jan. 19, 1993.
 
 Charles Oldham and Louis Gilden, St. Louis, MO, argued, for appellants.
 James E. McDaniel, St. Louis, MO, argued (Robert A. Kaiser, St. Louis, and Maurice G. Jenkins, Detroit, MI, on the brief), for General Motors Corp.
 Connye Y. Harper, Detroit, MI, argued (Leonard Page, on the brief), for appellee Local Union 25.
 Before WOLLMAN, Circuit Judge, BRIGHT and HENLEY, Senior Circuit Judges.
 BRIGHT, Senior Circuit Judge.
 
 
 1
 A group of General Motors (GM) workers (the Blount group) brings this suit against GM and its representative unions, alleging violations of section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185 (1988). The Blount group asserts GM violated its collective bargaining agreement by refusing to permit its members to transfer from a plant GM was closing to a new replacement facility. The Blount group claims its unions, United Automobile Workers (UAW) and UAW Local Union 25 (Local 25), breached their duty of fair representation by refusing to prosecute the Blount group's grievance against GM.
 
 
 2
 The district court bifurcated the case as to liability and damages. The liability phase was tried to a jury, which found in favor of the Blount group as against Local 25, but in favor of both GM and UAW as against the Blount group. The district court subsequently granted judgment n.o.v. to Local 25. The Blount group appeals. We affirm.
 
 I. BACKGROUND
 
 3
 This class action dispute evolves from a decision by GM to close its St. Louis Bus & Truck plant (GM-St. Louis) and replace it with a new facility, approximately thirty-five miles away, in Wentzville, Missouri (GM-Wentzville). The plaintiffs in this case, the Blount group, are members of UAW and Local 25,[1] who worked at GM-St. Louis and who assert they were wrongfully denied an opportunity to transfer to GM-Wentzville.
 
 
 4
 These workers were originally hired to work at GM-St. Louis in December of 1976, and subsequently laid-off in late 1979 and early 1980. On July 29, 1982, and while the Blount group was laid-off, GM and the UAW supplemented their existing collective bargaining agreement with a Memorandum of Understanding (the Wentzville memorandum) and subsequent letter agreement, governing the transfer of union personnel from GM-St. Louis to GM-Wentzville.[2] Pursuant to these agreements, GM mailed a letter and application to employees of GM-St. Louis stating they would be eligible for transfer if they met certain conditions. Although each member of the Blount group completed and filed a timely application, none were hired or transferred.
 
 
 5
 Instead, GM recalled each member of the Blount group to work at GM-St. Louis. On October 21, 1985, the parties executed another Memorandum of Understanding, in which GM offered to all nontransferable GM-St. Louis employees an opportunity to transfer to its Fort Wayne, Indiana assembly. Many GM-St. Louis employees accepted this offer.
 
 
 6
 In December of 1985, the Blount group formally came together and hired attorneys Charles Oldham and Louis Gilden. In their contract with Oldham and Gilden, the Blount group agreed to pay a retainer, all expenses, and one-third of any monies received from the suit.
 
 
 7
 On January 15, 1986, members of the Blount group filed a group grievance with Local 25, asserting GM had violated the Wentzville memorandum. Local 25 refused to pursue the grievance, after which the Blount group appealed to the President of the UAW, who affirmed Local 25's decision.
 
 
 8
 The Blount group then filed suit against GM in Circuit Court of the City of St. Louis. On February 19, 1986, GM removed the case to the Eastern Division of the United States District Court for the Eastern District of Missouri and, on March 4, 1987, the district court certified the Blount group as a class. The Blount group then filed its third amended complaint, alleging GM, UAW and Local 25 violated the collective bargaining agreement by wrongfully denying the Blount group their transfer rights under the Wentzville memorandum. The Blount group alleged that the unions breached their duty of fair representation by failing to prosecute its grievance against GM. In their suit, the Blount group sought both equitable relief and money damages.
 
 
 9
 In 1987, GM entered into a Voluntary Termination of Employment Plan (VTEP)[3] agreement with twenty-two Blount group members. Under the agreement, an employee who accepted an offer to leave GM received $25,000.
 
 
 10
 On December 31, 1987, GM moved for partial summary judgment as to the twenty-two members who opted for the VTEP deal. In response, the Blount group filed a motion on January 11, 1988 to impress an attorney's fee lien on the VTEP monies paid to the twenty-two members.
 
 
 11
 The district court bifurcated the case such that the jury heard issues of liability and the district court retained questions of damages. The matter went to a five-day jury trial, beginning on May 6, 1988.[4] GM and the unions moved for directed verdicts, all of which were denied. The jury returned a verdict in favor of the Blount group as against Local 25, but in favor of GM and the UAW as against the Blount group. Local 25 filed a motion for new trial, or in the alternative for judgment n.o.v., and the Blount group moved for a new trial against GM.
 
 
 12
 On September 23, 1988, GM moved to withdraw its previous partial summary judgment motion.
 
 
 13
 On May 14, 1990, the district court issued a memorandum opinion and order, denying: (1) GM's request to withdraw its partial summary judgment motion, ruling the motion was moot; (2) Local 25's motion for a new trial or j.n.o.v.; (3) the Blount group's request to impress an attorney's fee lien; (4) the Blount group's motion for a new trial against GM; and (5) the Blount group's claim for equitable relief. The district court left open the question of damages.
 
 
 14
 On May 23, 1990, the Blount group filed an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) (1988), which we denied.
 
 
 15
 On April 9, 1991, the district court conducted a hearing for four members of the Blount group on the issue of their damages. Then on December 31, 1991, the district court granted, sua sponte, Local 25's motion for judgment n.o.v. On January 2, 1992, the district court entered its final judgment, adopting the jury's verdict in favor of the UAW and GM as against the Blount group, and incorporating its sua sponte granting of judgment n.o.v. to Local 25.
 
 
 16
 The Blount group appeals here from the judgment for defendants on the merits and for equitable relief, asserting that the district court erred in granting judgment n.o.v. for Local 25, in denying post-trial motions for a new trial against GM and UAW and in refusing to impress a lien on VTEP sums paid to some members of the class. We turn to the issues raised on appeal.[5]
 
 II. THE JUDGMENT N.O.V. ORDER
 
 17
 The Blount group contends the district court erred in granting Local 25's motion for judgment n.o.v. The Blount group argues, in effect, that sufficient evidence was presented supporting the jury's determination that Local 25 violated its duty of fair representation. The Blount group suggests the district court granted the judgment n.o.v. order both sua sponte and belatedly because the district court, after hearing only four damages cases, realized the tremendous amount of work it faced in hearing the remaining seventy-plus damages cases. It asserts the jury properly found that Local 25 acted in bad faith or with dishonesty, hostility, discrimination or arbitrariness in failing to process the Blount group's grievance.
 
 
 18
 A motion for directed verdict or judgment n.o.v. will not be sustained where substantial evidence supports the jury's verdict. Gulbranson v. Duluth, Missabe & Iron Range Ry., 921 F.2d 139, 141 (8th Cir.1990); Brooks v. Woodline Motor Freight, Inc., 852 F.2d 1061, 1063 (8th Cir.1988). We review the district court's decision de novo, and in the light most favorable to the party against whom the challenge on appeal is made. Id. We will not overrule a district court's granting of judgment n.o.v. where the evidence lends itself to any reasonable inference supporting the prevailing party's position. Ehrhardt v. Penn Mut. Life Ins. Co., 902 F.2d 664, 668 (8th Cir.), cert. denied, 498 U.S. 855, 111 S.Ct. 152, 112 L.Ed.2d 118 (1990); Brown by Brown v. Syntex Laboratories, Inc., 755 F.2d 668, 671 (8th Cir.1985).
 
 
 19
 An employee may assert an action against her employer under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1988) if the employee can prove both "there was a breach of the collective bargaining agreement and ... the union breached its duty of fair representation." Tripp v. Angelica Corp., 921 F.2d 794, 795 (8th Cir.1990). That the claim here is brought not by a single employee, but by a group, and that it is not assailed against an employer, but against a union, does not change the analysis. The Blount group must still prove GM and Local 25 breached their respective responsibilities.
 
 
 20
 Thus, we must determine whether there is substantial evidence in the record showing: (1) GM breached the collective bargaining agreement, and (2) Local 25 breached its duty by failing to prosecute the resulting grievance. It necessarily follows that Local 25 has breached no duty if the Blount group has no bona fide grievance against GM. See Tongay v. Kroger Co., 860 F.2d 298 (8th Cir.1988); Sanders v. Youthcraft Coats & Suits, Inc., 700 F.2d 1226 (8th Cir.1983).[6]
 
 
 21
 The alleged breach of the collective bargaining agreement derives from the Blount group's claim that GM violated the Wentzville memorandum by failing to transfer members of its group to the new Wentzville facility. The Wentzville memorandum provides, in relevant part, that
 
 
 22
 eligible employes [sic] who desire to transfer [to the Wentzville facility] must respond [to GM's notification of the transfer opportunity] by filing a valid application at the GMAD-Wentzville Plant's Employment Office before the close of business on August 27, 1982.
 
 
 23
 ....
 
 
 24
 The provisions of this MEMORANDUM are applicable only to those laid off employes [sic] who file a valid application during the specified application period and who have unbroken seniority at the time they report for work.
 
 
 25
 Memorandum of Understanding at 4, 6 (emphasis added).
 
 
 26
 There is no dispute that the members of the Blount group filed timely applications. Thus, we turn to the evidence concerning whether the Blount group members had "broken seniority." An employee "breaks seniority" when, after going "time for time"--a process by which an employee loses a day of seniority for each day he is laid-off--the number of days the employee has been laid-off exceeds the total number of days the employee has worked.
 
 
 27
 Ralph Handley, who in 1982 represented GM in its negotiations of the Wentzville memorandum, testified that each member of the Blount group had broken seniority. James Wagner, who negotiated and signed the Wentzville memorandum on behalf of the UAW, testified that, under the memorandum, a union worker who had gone time for time and had broken seniority had no right to transfer to the Wentzville facility. This testimony was corroborated by Walter Williams, who was involved in the negotiations of the Wentzville memorandum on behalf of the UAW and who has since administered Local 25's implementation of it. He testified he held several meetings with Local 25 members affected by the memorandum in which he explained that those members who had broken, or would be breaking, seniority by going time for time were ineligible for transfer to the Wentzville plant.
 
 
 28
 This evidence is countered by the testimony of Blount group members. The Blount group's lead witness, Adam Case, a Local 25 union representative, testified on direct examination that he had "been involved with the [Wentzville] Memorandum for a period of time." Trial Tr. at 1-25 to 1-26. Case testified that soon after the memorandum was executed in 1982, he advised Ray Kosulandich, a member of the Blount group, he believed Kosulandich had not broken seniority and that he was entitled to transfer to the Wentzville plant. On cross-examination, however, Case conceded that he was not a party to the negotiations of the Wentzville memorandum; that, in fact, the Local 25 had no input whatsoever in the negotiations; and that, in retrospect, Kosulandich and the other members had indeed broken their seniority for purposes of establishing their eligibility for transfer.
 
 
 29
 Kosulandich himself testified that, around this same time, Case and another union official, Charles Langley, told him they thought he was entitled to transfer to Wentzville. Kosulandich further explained that when he and others were recalled, they were brought to a meeting, in groups of fourteen, attended by the GM-St. Louis plant manager, a GM personnel official, a Mr. Skaggs, and two union officials. At the meeting, they were told that after returning and working for thirty days at 85% of their previous wage rate, they would be entitled to their seniority, would go back to earning 100% of their previous wage, and would be eligible to transfer to the Wentzville facility when the St. Louis plant closed down.
 
 
 30
 Another member of the Blount group, Randall Krez, testified he went to the Wentzville facility after completing the hiring application and was told by a personnel official at the plant, Mr. Gleason, he was not eligible to work there because he had recall rights at GM-St. Louis. But then after he was called back to work at GM-St. Louis, Skaggs told him he did have transfer rights to the Wentzville plant. Patricia Ann Burns, another Blount group member, testified she completed the application for hire at Wentzville mailed to her, but heard nothing. After returning to work at GM-St. Louis, she was told by Langley that she, too, had transfer rights to GM-Wentzville. Fellow Blount group members Annie Foster, Ernest Gielow, Rickie Kindrick, and Angeline Sciotto similarly testified they were told by officials at GM, either Gleason or Skaggs, or Local 25 officials, Case, Langley or Jim Rice that they were eligible to transfer to GM-Wentzville when GM-St. Louis closed.
 
 
 31
 We are sensitive to the obviously confusing and frustrating plight of these union members. But the testimony they proffer consists, in large part, of interpretations of the Wentzville memorandum and subsequent letter agreement made after their execution and mostly by Local 25 officials who were in no way a part of the Wentzville transfer negotiations. Similarly, we are unable to give any weight to statements made by Gleason or Skaggs because these, too, were made following the execution of the written agreements.
 
 
 32
 Consequently, we are unable to say there is substantial evidence in the record indicating GM breached the parties' written agreements. Our finding here obviates further discussion concerning whether Local 25 breached its duty of fair representation because, as we noted above, a section 301 violation does not survive in the absence of a breach of the collective bargaining contract. See Marshall v. Teamsters Local 6, 960 F.2d 1360, 1368 (8th Cir.1992); Tripp v. Angelica Corp., 921 F.2d 794, 795 (8th Cir.1990). We emphasize that a union is simply under no obligation to prosecute an unmeritorious grievance. See Tongay v. Kroger Co., 860 F.2d 298, 299-300 (8th Cir.1988); Sanders v. Youthcraft Coats & Suits, 700 F.2d 1226, 1229 (8th Cir.1983).
 
 
 33
 Thus, we rule the district court properly granted judgment n.o.v. to Local 25 because it could not draw here a reasonable inference in favor of GM, Ehrhardt v. Penn Mutual Life Insurance Co., 902 F.2d 664, 668 (8th Cir.1990); Brown by Brown v. Syntex Laboratories, Inc., 755 F.2d 668, 671 (8th Cir.1985), and the evidence, in our view, does not otherwise support the jury's award. Gulbranson v. Duluth, Missabe & Iron Range Ry., 921 F.2d 139, 141 (8th Cir.1990); Brooks v. Woodline Motor Freight, Inc., 852 F.2d 1061, 1063 (8th Cir.1988).[7]
 
 III. THE ATTORNEY'S FEE LIEN
 
 34
 The Blount group contends the district court erred in denying its motion for an attorney's fee lien because, in essence, the district court applied the wrong Missouri state statute.
 
 
 35
 We review the district court's interpretation of Missouri state law de novo, giving no deference to the lower court's ruling. Tillwick v. Sears, Roebuck & Co., 963 F.2d 1097, 1098 n. 3 (8th Cir.1992); Paramount Pictures Corp. v. Metro Program Network, Inc., 962 F.2d 775, 778 n. 6 (8th Cir.1992).
 
 
 36
 The district court applied Mo.Rev.Stat. § 484.140 (1986), which provides, in relevant part:
 
 
 37
 it shall be lawful for an attorney at law ... to contract with his client for legal services rendered or to be rendered him for a certain portion or percentage of the proceeds of any settlement of his client's claim or cause of action ... and upon notice in writing by the attorney who has made such agreement with his client, served upon the defendant or defendants ... that he has such an agreement with his client....
 
 
 38
 The Blount group maintains that GM's payment of $25,000 in VTEP benefits to twenty-two members of the Blount group along with GM's subsequent motion for partial summary judgment as to these members were, in effect, actions taken to relieve itself of liability in this suit. As such, the Blount group argues these payments were settlement monies to which Mo.Rev.Stat. § 484.130 (1986) applies. Missouri Revised Statute § 484.130 provides, in relevant part:
 
 
 39
 From the commencement of an action or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor, and the proceeds thereof in whosesoever hands they may come; and cannot be affected by any settlement between the parties before or after judgment.
 
 
 40
 In our view, the district court properly applied Mo.Rev.Stat. § 484.140. From a procedural standpoint, Mo.Rev.Stat. § 484.130 does not apply because the Blount group failed to provide opposing parties with written notice of the agreement, as required by the statute. From a substantive viewpoint, the monies to which the Blount group argues it has a claim were payments GM was contractually obliged to make pursuant to its VTEP offer. The VTEP offer was part of a nationally negotiated collective bargaining agreement that was developed wholly independent of the dispute here between the Blount group, GM and the unions, and could be triggered only upon the initiation of the employee.
 
 AFFIRMED.[8]
 
 
 [1]
 The UAW was the collective bargaining agent for the workers, and Local 25 their local union in the GM-St. Louis plant
 
 
 [2]
 The Memorandum of Understanding was executed pursuant to paragraph 96 of the collective bargaining agreement between GM and the UAW. Such memoranda are sometimes referred to as paragraph 96 agreements. The letter agreement was simply a letter GM sent to the UAW on July 29, 1982 (the day the parties executed the Memorandum of Understanding), which the UAW signed and returned to GM, outlining the operation of the memorandum agreement
 
 
 [3]
 The 1984 Collective Bargaining Agreement authorized GM and the unions to enter into the VTEP agreements
 
 
 [4]
 The case was presided over by United States Magistrate Judge William S. Bahn by consent of the parties under 28 U.S.C. § 636(c)(3) (1988)
 
 
 [5]
 The Blount group also argues the district court erred in instructing the jury to disregard any references to the so-called Area Hire Agreement. The agreement is a separate appendix to the parties' Collective Bargaining Agreement, which the Blount group, in essence, maintains gave laid-off GM-St. Louis employees with seniority hiring preference over other non-area candidates for jobs at GM-Wentzville. In our view, the district court properly gave the limiting instruction because the Blount group, for whatever reason, failed to plead or otherwise raise issues concerning the agreement in any of its pleadings
 Finally, the Blount group argues the district court erred in refusing to give an apportionment of liability instruction. We disagree. To the extent apportionment applies here, it does so only as to calculating damages, not in determining liability.
 
 
 [6]
 The Blount group argues that under the Supreme Court's ruling in Breininger v. Sheet Metal Workers International Association Local Union No. 6, 493 U.S. 67, 81, 110 S.Ct. 424, 433, 107 L.Ed.2d 388 (1989), the Blount group was not required to allege or prove GM breached the collective bargaining agreement. In our opinion, the instant case is factually distinguishable from Breininger. The case before us focuses on a local union's refusal to prosecute a grievance against an employer, whereas Breininger involved alleged discrimination in a union hiring hall referral system over which the employer had no authority or responsibility. That GM breached the bargaining agreement is necessarily an element of proof the Blount group must establish to prevail against Local 25. See Marshall v. Teamsters Local 6, 960 F.2d 1360 (8th Cir.1992); Tripp v. Angelica Corp., 921 F.2d 794 (8th Cir.1990). Local 25 is not obliged to prosecute a grievance that has no merit. Tongay v. Kroger Co., 860 F.2d 298 (8th Cir.1988); Sanders v. Youthcraft Coats & Suits, 700 F.2d 1226 (8th Cir.1983)
 
 
 [7]
 That the district court granted Local 25's motion for judgment n.o.v. both sua sponte and belatedly has no affect on our conclusion. See Fed.R.Civ.P. 50(b)
 
 
 [8]
 Although this court affirms the district court, the writer of this opinion feels obliged to make an additional personal observation, one not essential to the determination of this case. The record is replete with testimony indicating GM personnel officials and Local 25 leaders misinformed and misled members of the Blount group into believing they could transfer to GM-Wentzville when GM-St. Louis shut down. I believe such evidence explains, for example, why the jury returned a verdict against Local 25
 My concern is that the "misinformation" or "advice" given these union workers may very well have swayed them from accepting GM's offer for the VTEP benefits for which they were, but apparently no longer are, eligible.
 I note that no promissory estoppel or quasi contract claim has been raised in this litigation. I also recognize that GM's offer for the VTEP benefits arose not from GM's interest in this case, but out of GM's contractual obligations made pursuant to the parties' collective bargaining agreement.
 Nevertheless, the Blount group members may have been misled, misinformed, or, as some evidence indicates, both. I would encourage the parties to take a hard look at whether the VTEP offer should still apply to otherwise qualified group members who might have accepted the offer, but for their hopes of greater success in the pending lawsuit--hopes to some extent fed by GM's representations.