**FEDERAL INSURANCE COMPANY, A Corporation, Plaintiff,**

v.

**Frank J. PARELLO, Virgil B. Onate, George Laivinieks, John P. Curtin, Dr. Martin Bruce Farkas, Dr. Arnold Kallen, Lester Barnes and Arnold Harris, Defendants.**

**Civ. No. 90 C 4669.**

United States District Court, N.D. Illinois, E.D.

Aug. 10, 1990.

Donald L. Mrozek, Peter D. Sullivan, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., and Daniel M. Purdom, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Lisle, Ill., for plaintiff.

William A. Barnett, Durkin, Foster, Robert & Barnett, Gerald Clay Risner, Jerome Rotenberg, Rosenfeld, Rotenberg, Schwartzman, Hafron & Shapiro, Daniel Eli Radakovich, George B. Collins, Collins

& Bargione, Donald C. Clark, Jr., Clark & DeGrand, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

The defendant, Frank J. Parello, moves to dismiss all 4 counts of the plaintiff's, Federal Insurance Company, ("Federal"), complaint. Count I of the complaint alleges a breach of fiduciary duty, count II alleges fraud, and counts III and IV allege violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). See 18 U.S.C §§ 1961 et seq., 1962(c) and (d).

Instead of a well thought out surgical strike, the defendant has launched a blitzkrieg attack arguing that the complaint should be dismissed for a variety of reasons. According to the defendant, the complaint suffers from the following deficiencies. Count I fails to state a cause of action, is not pled with particularity under federal rule 9(b), and is not justiciable because the plaintiff lacks standing and this court lacks subject matter jurisdiction. Count II suffers from the same defects as count I except that it apparently does state a cause of action. Count III is in even worse shape. Like count I, it is not pled with particularity and the plaintiff lacks standing to pursue the action. In addition, count III is barred by the statute of limitations, fails to allege a pattern of racketeering, and fails to adequately allege an enterprise. Count IV, which relatively speaking is a model of health, is barred by the statute of limitations, is not pled with particularity under federal rule 9(b), and the plaintiff lacks standing to bring the action. Before addressing the merits of the defendant's motion, which if accurate would make this complaint pound for pound the most defective one filed in this court in years, the court will review the salient facts of this dispute.

### Facts

Around January of 1983, Federal issued a fidelity bond to Lincoln National Corporation ("Lincoln") and American States Insurance ("American") to cover them from losses sustained due to fraudulent or dishonest acts of their employees. According to the complaint, the defendants perpetrated a scheme whereby fraudulent claims were submitted to either Lincoln or American. These claims, which ran in the millions of dollars, were ultimately paid by the insurance companies. Under the terms of the fidelity bond, Federal was required to reimburse those companies for their losses. Federal as assignee and subrogee of Lincoln and American brings this action against the defendants.

The key figures in this scheme were defendants Parello and Onate who worked as claim adjustors for American. With the aid of defendants Laivinieks, Curtin, Farkas, Kallen, Barnes, and Harris they orchestrated a scheme to collect on fraudulent insurance claims. Their usual tactics were either to stage a fictitious automobile accident or cause one. In staged accidents, the defendants would recruit "accident victims" who would claim they were struck by a hit and run driver. To inflate the claims, the recruits would receive unnecessary medical treatment from crooked doctors involved in the fraud. In addition to staging accidents, the defendants would intentionally cause them. In a typical case, the perpetrator would maneuver his car a short distance ahead of another vehicle. The perpetrator would then slam on his brakes causing an innocent driver to collide with the rear portion of his vehicle. Oftentimes, the perpetrator would disconnect his brake lights making it impossible for the innocent driver to stop in time.

To collect on these claims, wrongfully issued claim checks as well as fraudulent claim forms were sent through the mails. These allegations add up to the following causes of action: breach of fiduciary duty, fraud, and violations of 18 U.S.C §§ 1961 et seq., 1962(c) and (d).

### Failure To State A Cause Of Action: Count I

The defendant's first attack on Federal's complaint is that count I does not state a cause of action for breach of fiduci-

ary duty. In Illinois, a fiduciary relationship exists "where there is a special confidence reposed on one side and a resulting superior knowledge or influence on the other." *A.T. Kearney Inc. v. INCA International Inc.*, 132 Ill.App.3d 655, 661, 87 Ill. Dec. 798, 477 N.E.2d 1326 (1st Dist.1985). As a matter of law, a fiduciary relationship exists between a principal and an agent. *Id.* Defendant claims that the plaintiff does not allege any connection between himself and Lincoln. In addition, the defendant contends that the complaint fails to allege that Lincoln or American reposed trust in the defendant, that the defendant accepted the trust thereby putting him in a superior position, and that he took advantage of that superior position.

■ The complaint establishes that Parello was employed by American. Therefore, as a matter of law, a fiduciary relationship exists. *Id.* In addition, there is no question that the complaint alleges that American reposed trust in the defendant and that he took advantage of that trust. The defendant had authority to cause American to make payments on its outstanding claims. He used his position to authorize payments that he knew were fraudulent in order to illegally profit. It is hard to imagine a better example of a fiduciary relationship than the one here.

■ The next question before the court is whether a fiduciary relationship existed between the defendant and Lincoln. The complaint avers that American is the wholly owned subsidiary of Lincoln, and that the defendant was employed by American. Although the defendant claims that a fiduciary duty does not exist between an agent of a wholly owned subsidiary and that subsidiary's parent, he has neither cited any case law nor made any argument supporting his position.

It is manifest that a subsidiary and its parent are separate and distinct entities. The law is replete with cases holding that absent improper conduct, a parent cannot be held liable for the actions of its subsidiary. See e.g. *Brown v. Syntex Laboratories* 755 F.2d 668 (8th Cir.1985). In addition, it is well settled that an owner of a

corporation has no standing to sue in his own right for an injury to the corporation on the ground that the injury has diminished the value of his stock. 13 W. Fletcher, Cyclopedia of Corporations §§ 5911–13 (1990). A far less discussed issue, yet nonetheless analogous, is whether a parent has standing to sue a tort-feasor for injuries sustained by its subsidiary. The courts and commentators found to have addressed this issue have uniformly held the parent does not have standing to pursue such a suit.

In *Picture Lake Campground v. Holiday Inns, Inc.*, 497 F.Supp. 858 (E.D.Va 1980) the defendant, Holiday Inns, executed a written license agreement with Picture Lake. When the defendant breached the license agreement with Picture Lake, its parent sued the defendant for tortious conduct committed against its subsidiary. Relying on the fact that a parent and a subsidiary are separate entities, the court held that Picture Lake's parent had no standing to sue the defendant. *Id.* at 863. See also 1 Fletcher Cyclopedia Corporations § 36 (1990) ("Nor does a corporation have standing to sue for injuries done to its sister corporation, despite the fact that their businesses are intertwined and the success of one is dependant on that of the other.").

Because all of the authority found to have addressed this issue supports the contention that a parent cannot sue for injuries suffered by its subsidiary, and the plaintiff has not alleged any facts that would indicate that the corporations were not separate entities, this court holds that defendant does not owe Lincoln a fiduciary duty.

### Subject Matter Jurisdiction: Counts I And II

■ Defendant next attacks the power of this court to entertain counts I and II of this dispute. According to the defendant, the complaint fails to allege that the defendants are citizens of a different state than the plaintiff. The defendant wins this battle but loses the war. Although the complaint does not allege the citizenship of the

defendants, this court has subject matter jurisdiction over counts I and II because they are pendant state claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Jurisdiction in this case is not dependent on the existence of diversity of citizenship and therefore allegations of citizenship are superfluous.

### Pleading Fraud With Particularity: Counts I–IV

■ The defendant claims that the entire complaint should be dismissed because fraud is not pled with particularity. Rule 9(b), Fed.R.Civ.P. provides:

> In all averments of fraud or mistake the circumstances constituting the fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other conditions of mind of a person may be averred generally.

Rule 9(b) governs all of the plaintiff's claims. *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 19 (2nd Cir.1983) (Rule 9(b) applies to fraud allegations in civil RICO complaints); *Onesti v. Thomson McKinnon Securities, Inc.*, 619 F.Supp. 1262, 1265 (N.D.Ill.1985) (Rule 9(b) applies to common law fraud claims). As this court stated in *Basil v. Leidesdorf*, 713 F.Supp. 1194 (N.D. Ill.1989), "a complaint of fraud is sufficient under rule 9(b) when it sets forth the time, place, and manner of false representations, identities of parties, and the consequences of misrepresentations." *Id.* at 1198.

In reviewing the sufficiency of a complaint, the court may consider exhibits attached thereto. *Beam v. Ipco Corp.*, 838 F.2d 242, 244 (7th Cir.1988). The plaintiff has attached exhibits A through G to his complaint which exhaustively recites many of the fraudulent actions undertaken by the defendant. According to the complaint, the defendant employed a variety of fraudulent schemes to inflate the amount of the claims. For example, the complaint avers that the defendant would report fictitious accidents in which the alleged accident victims would receive unnecessary medical treatment. In other cases, the defendants would plan staged accidents by causing an innocent driver to rear end a co-conspirator in the scheme.

In order to carry out this scheme, Parello enlisted scores of people who would stage phony accidents or send in medical bills for treatment that was not performed. For instance, around November of 1985 Dr. Arnold Kallen submitted fictitious medical bills for services rendered to John Kiley knowing that Kiley was not injured nor was treatment rendered. The plaintiff in exhibit C lists every fraudulent claim by claim number, the name of the claimant and its amount. In addition, exhibit D recounts, in detail, the facts underlying many other fraudulent claims.

There is no question that fraud is pled with particularity. The plaintiff has compiled, in exhaustive detail, the time, place, and manner of the false representations. In addition, the plaintiff has adequately identified the culpable parties by providing detailed lists of the participants and their role in the fraud. Finally, the complaint leaves no question as to the consequences of the defendant's actions.

### Statute Of Limitations: Counts III And IV

The defendant, in rather conclusory fashion, states "it is clear from the complaint that all claims alleged in counts III and IV accrued more than four years prior to the filing of the instant complaint." The plaintiff counters that its claims accrued on August 11, 1990, when American discovered that the defendants were perpetrating this fraud.

■ In *Agency Holding Corp. v. Malley Duff & Assoc.*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987), the Supreme Court held that the statute of limitations for civil RICO claims is four years. The Court, however, expressed no opinion on when such claims accrue. *Id.* at 157, 107 S.Ct. at 2767. This court has held that a RICO claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of his cause of action. *United Airlines, Inc. v. CEI Industries, Inc.*, 654 F.Supp. 1209, 1211 (N.D.Ill.1987).

The complaint avers that the plaintiff did not discover the illegal conduct until August 11, 1986 when the FBI informed Fred Bazley, a vice-president at American, that it suspected that the defendants were involved in a fraudulent scheme. Therefore, for purposes of the statute of limitations, this action accrued on August 11, 1986. Because the complaint was filed on August 10, 1990, within four years of the discovery of the fraud, it is timely.

### Pattern Of Racketeering: Count III

The defendant argues that because the complaint has only alleged one scheme it fails to adequately plead a pattern. In order to amount to a pattern of racketeering activity, "the predicate acts must be ongoing over an identified period of time so that they can be viewed as constituting separate transactions, i.e. transactions somewhat separated in time and space." *Morgan v. Bank of Waukegan,* 804 F.2d 970, 975 (7th Cir.1986). Here the alleged improprieties spanned a five year period in which the defendant participated in more than 180 fraudulent automobile accident claims. The acts of fraud were clearly separated both in time and space.[1]

### Standing

Having lost almost every battle to this point, the defendant launches his final assault armed with an Illinois appellate court case from 1909. *Babcock v. Farwell,* 146 Ill.App. 307 (1st Dist.1909). The defendant asserts that *Babcock* prohibits the plaintiff from bringing counts I and II as the assignee and subrogee of American and Lincoln. The plaintiff counters that more recent case law permits subrogation, even when that right is not based upon a contractual agreement.[2] See *Schultz v. Gotlund,* 185 Ill.App.3d 943, 134 Ill.Dec. 53, 542 N.E.2d 53 (1st Dist.1989).

In *Schultz,* the plaintiffs, Michael and Joyce Schultz, filed suit to recover for personal injuries sustained when the defendant, Timothy Gotlund, struck their automobile. Loretto Hospital, which had paid over $60,000 for Michael's medical expenses under an employee group health insurance policy, filed a petition to intervene. Because the insurance policy did not contain an express subrogation provision, the hospital relied on the common law right of subrogation. Holding that the hospital had a right to intervene, the court stated, "if an insurer pays a loss which is due to the wrongful act of another, it is subrogated to the rights of the insured ... This is a rule independent of contract." *Id.* at 949, 134 Ill.Dec. 53, 542 N.E.2d 53

*Schultz* supports the plaintiff's position. Unfortunately for the plaintiff, *Schultz* was reversed on September 26, 1990 by the Illinois supreme court. See *Schultz v. Gotlund,* 138 Ill.2d 171, 149 Ill.Dec. 282, 561 N.E.2d 652 (1990). The supreme court held that insurance companies do not have an equitable right of subrogation in the area of personal injury insurance, which includes policies for medical expenses and

---

1. The defendant also asserts that count III fails to allege an enterprise. The defendant states, "since the 'enterprise' (American States) was acting through the 'person' (Parello and Onate) they were not separate and distinct as required under the statute." The defendant cites no relevant authority to support his argument. In fact, there is authority from the seventh circuit that belies this very contention. In *Haroco Inc. v. American National Bank and Trust Co.,* 747 F.2d 384 (7th Cir.1984), the seventh circuit stated, "we focus our attention on the language in section 1962(c) requiring that the liable person be employed by or associated with any enterprise which affects interstate commerce." *Id.* at 400.

2. Not only is *Babcock* over 90 years old, it is irrelevant. Babcock owned 20,000 shares of stock in the Capital Freehold Land and Investment Company. Upon his death, the stock was transferred to his wife. She brought a lawsuit seeking to declare certain contracts between the corporation and a third party void. These contracts had been consummated prior to her acquisition of the stock. The court held that Mrs. Babcock did not have standing to pursue this action because Mr. Babcock's contractual rights were personal and unassignable, and the contracts between the corporation and third parties were consummated prior to her acquisition of the stock. *Babcock* does not address the issue of subrogation or the rights of an insurance company to take a claim by assignment from an insured.

accidents. *Id.* at 175, 149 Ill.Dec. 282, 561 N.E.2d 652.

Although this case does not involve personal injury insurance, both parties have failed to cite any relevant case law. The question still remains whether this claim can be assigned and whether the plaintiff has the right of equitable subrogation. Therefore, the court orders the parties submit additional briefs limited to the issue of whether the plaintiff has standing to recover on counts I and II.

The defendant's final contention is that the RICO counts, III and IV, cannot be assigned to the plaintiff. The court will recount the defendant's entire argument verbatim.

> Similarly, with respect to Counts III and IV, 18 U.S.C. Sec. 1964(c) vests a civil RICO cause of action in any person injured in his business or property by reason of a violation of section 1962. We submit that the language of the statute, as well as public policy considerations, do not allow assignment of civil RICO claims.

 The assignability of RICO claims is not a question of first impression. In *In re National Mortgage Equity Corporation Mortgage Pool Certificate Securities Litigation*, 636 F.Supp. 1138 (C.D.Cal. 1986), the court held that RICO claims are assignable. *Id.* at 1156. In reaching this decision, the *National Mortgage Equity* court analogized the RICO statute to the Antitrust statutes. Because it is well established that antitrust damages claims are assignable, see *In re Fine Paper Litigation*, 632 F.2d 1081 (3rd Cir.1980); *D'Ippolito v. Cities Serv. Co.*, 374 F.2d 643, 647 (2nd Cir.1967) and that the goals of the two statutes are similar, deterring interference with free competition, the court concluded that RICO claims are assignable. *National Mortgage Equity*, 636 F.Supp. at 1153. See also S. 2048, 90th Cong. 1st Sess. (1967) (Originally, RICO was proposed as an amendment to the Sherman Act.) This court agrees with the reasoning of the District Court of California. There is very little room to argue that Congress would intend to allow the assignment of antitrust claims and would prohibit the assignment of RICO claims. Therefore, the defendant's motion to dismiss counts III and IV based on the plaintiff's lack of standing is denied.

 With the exception of the defendant's arguments that counts III and IV are barred by the statute of limitations, that the court does not have subject matter jurisdiction over counts I and II, that RICO claims are not assignable, and that the defendant does not owe a fiduciary duty to Lincoln, this motion to dismiss has no support in the law and consequently is frivolous. The defendant supported most of his arguments with irrelevant case law. Therefore, under Rule 11, this court will enter sanctions against the defendant. The plaintiff, by citing an appellate court case that was reversed, has also come very close to sanctions. See *Schultz v. Gotlund*, 138 Ill.2d 171, 149 Ill.Dec. 282, 561 N.E.2d 652 (1990). Because *Schultz* was reversed just one month prior to the plaintiff's response, this court will not enter sanctions against it.

With the exception of the defendant's argument that he does not owe a fiduciary duty to Lincoln, his motion to dismiss is denied. The court, under Rule 11, will enter sanctions against the defendant. The parties may file additional briefs, not to exceed 8 pages, on the issue of whether the plaintiff has standing to pursue counts I and II. The clerk will set an appropriate briefing schedule.