SIXTH DIVISION
MAY 21, 2010

No. 1-09-2212

| | | |
|---|---|---|
| CHARLOTTE PANKROS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 08 L 2048 |
| | ) | |
| FRED TYLER and RICKY DAHMS, | ) | Honorable |
| | ) | Allen Goldberg |
| Defendants-Appellants. | ) | Judge Presiding. |

JUSTICE ROBERT E. GORDON delivered the opinion of the court:

Plaintiff Charlotte Pankros filed a complaint against defendants Fred Tyler (Tyler) and Ricky Dahms (Dahms), in the circuit court of Cook County alleging a civil violation of the Federal Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. §§ 1961 through 1968 (2006)). Defendants filed a motion to dismiss plaintiff's complaint pursuant to section 2-615 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2008)). Defendants argued that their conduct was not the proximate cause of plaintiff's injury and that plaintiff lacked standing to bring a civil lawsuit against defendants under RICO. The trial court granted defendants' motion to dismiss with prejudice.

Plaintiff then filed a motion to reconsider and requested leave to amend her complaint, which the trial court granted. Plaintiff filed an amended complaint in which the changes are set forth in detail in this decision. Defendants again filed a section 2-615 motion to dismiss on substantially similar grounds as their initial motion. The trial court again granted defendant's motion to dismiss with prejudice. No further pleadings were filed. On appeal, plaintiff claims

that the trial court erred in finding that: (1) defendants' RICO violations were not a proximate cause of plaintiff's injury; and (2) plaintiff lacked standing to bring a RICO action against defendants. We affirm.

BACKGROUND

A. The Parties

According to the complaint, defendant Tyler is the former owner of a tavern called "Off Broadway Pub" located in Brookfield, Illinois. The complaint does not detail the type of business formation under which the tavern was created. Defendant Dahms is the current owner and operator of the tavern. Plaintiff is the ex-wife of Dennis Pankros (Dennis), who patronized the tavern during the couple's marriage and who allegedly lost large sums of money gambling on video machines in the tavern.

B. Procedural History

1. Initial Complaint

On February 22, 2008, plaintiff filed a two-count complaint against defendants for a civil RICO violation.

In her complaint, plaintiff alleged that during the course of her divorce proceedings with Dennis, she discovered "hundreds of thousands of dollars" of the marital estate had been lost as a result of Dennis's alleged illegal gambling activities which took place at the Off Broadway Pub.

The first count in the complaint alleged the following: Tyler had placed entertainment "gambling machines" in the tavern. Since 1999, Tyler had encouraged the tavern's patrons to use credit or debit cards "to obtain funds to gamble" on the machines. Tyler falsely represented

2

patrons' gambling charges as "food or beverage service" charges when he submitted the charges to the credit or debit card companies or financial institutions that issued the card.

The first count further alleged that Tyler allowed Dennis to make charges on his credit or debt cards so that Dennis could "pay for or obtain cash to gamble on" the tavern's machines. Tyler then submitted Dennis's gambling charges as food and beverage service to Dennis's credit or debt card companies.

The allegations in the second count were similar to the first count, except that they were asserted against Dahms, who had purchased the tavern from Tyler in 2003.

Under each of the two counts, plaintiff claimed that she suffered damages as a result of Tyler's and Dahms's alleged RICO violations because "hundreds of thousands of dollars of assets which would otherwise have been a part of [plaintiff and Dennis's] marital estate *** had been dissipated" through the tavern owners' fraudulent billing scheme.

The complaint further claimed that "[a]s part of the marital settlement agreement [between plaintiff and Dennis], [p]laintiff was assigned and retained this claim, at least in part, as compensation for the dissipation of the marital estate."

On September 19, 2008, defendants filed a motion to dismiss plaintiff's complaint pursuant to section 2-615 of the Code, claiming that plaintiff failed to state a cause of action. First, defendants argued that the alleged RICO violation was not the proximate cause of plaintiff's injury as held by the United States Supreme Court in *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453, 164 L. Ed. 2d 720, 726, 126 S. Ct. 1991, 1994 (2006), citing *Holmes v. Securities Investor Protection Corporation*, 503 U.S. 258, 268, 117 L. Ed. 2d 532, 112 S. Ct.

1311 (1992). Rather, defendants argue that any damages that plaintiff may have suffered were a result of Dennis's gambling and not any acts of defendants.

Second, defendants argued that plaintiff also lacked standing to bring a civil RICO claim because plaintiff was not injured "by reason of" defendants' alleged RICO violations, as required by the RICO statute. Rather, they argued, plaintiff was injured as a result of Dennis's proclivity to gamble.

Defendants further argued that plaintiff's allegation that she had been assigned the right to pursue the matter was without factual support. They asserted that the RICO statute does not provide for an assignment of a claim, but did not provide any support for that assertion. Defendants further argued that even if one could assign a civil claim under RICO, Dennis could not assign his civil claim to plaintiff against defendants. This argument also lacked any statutory or case law support. Again, they argued that Dennis lacked standing to bring a civil RICO claim against defendants because any injury was the result of Dennis's gambling, not the defendants' alleged RICO violations.

In her answer to defendants' motion to dismiss, plaintiff argued that she suffered a direct injury as a result of defendants' alleged RICO violations because defendants were fraudulently billing Dennis's credit card companies which were reimbursed by funds from the marital estate and caused plaintiff to incur debt for which she was responsible. Furthermore, plaintiff argues that under "the traditional view of proximate cause," plaintiff was a "foreseeable victim of the defendants' RICO violation." Thus, plaintiff concluded, "proximate causation existed and she ha[d] standing to bring her [civil] RICO claims."

4

On November 7, 2008, the trial court entered an order with a written opinion and granted defendants' motion to dismiss with prejudice. The trial court found that the financial losses to plaintiff were a result of Dennis's actions and that "the direct victims in this case are the credit card companies who were defrauded by [d]efendants."

In addition, the trial court disagreed with plaintiff's allegation that she had been assigned the right to bring a civil claim under RICO. The trial court found the federal RICO statute does not provide for an assignment of a claim, but did not provide any support for that finding. The trial court further found that even assuming that the statute provided for such an assignment, Dennis lacked standing to bring a civil RICO claim because the financial losses he suffered were caused by his gambling. Thus, the trial court concluded, if Dennis could not have assigned to plaintiff the right to bring a civil RICO claim against defendants, then plaintiff also lacked standing to bring such a claim.

## 2. Motion to Reconsider

On November 21, 2008, plaintiff filed a motion to reconsider the November 7 order granting defendants' motion to dismiss.

First, plaintiff asked the trial court to reconsider its finding that "the credit card companies were the 'direct victims' of the defendants' [RICO violations]" when there were no facts in the complaint alleging that the credit card companies suffered any injury.

Second, plaintiff argued that she was injured by defendants' actions because she had a direct and legal interest in the marital estate, a common asset by law, which had been dissipated as a result of defendants' actions.

5

Third, plaintiff argued that the trial court incorrectly found that a civil RICO violation is not assignable. *Federal Insurance Co. v. Parello*, 767 F. Supp. 157, 163 (N.D. Ill. 1991) (finding that RICO claims are assignable).

Fourth, plaintiff argued that the trial court incorrectly found defendants' actions were not a proximate cause of plaintiff's injury when she "suffered a direct injury to an asset in which she had a direct interest," namely, the marital estate. Moreover, plaintiff argued that RICO was intended to broaden the relief available to private litigants unhampered by strict requirements as "standing to sue" and "proximate cause." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 498-99, 87 L. Ed. 2d 346, 360, 105 S. Ct. 3275, 3286 (1985).

Plaintiff further argued that in negligence actions, there could be more than one "proximate cause" for an injury. *Nelson v. Union Wire Rope Corp.*, 31 Ill. 2d 69, 88 (1964); *Jefferson v. City of Chicago*, 269 Ill. App. 3d 672, 676 (1995). Plaintiff argued that the same concept should apply in a civil RICO action where proximate cause "is supposed to be somewhat relaxed, not made more restrictive."

On January 9, 2009, defendants filed a response to plaintiff's motion to reconsider in which they argued again that plaintiff did not suffer damages as a result of the alleged actions of defendants. Rather, Dennis was the cause of any financial losses suffered by plaintiff.

Defendants also argued that plaintiff presented no authority showing that her claim was assignable and distinguished *Federal Insurance Co. v. Parello*, 767 F. Supp. 157 (N.D. Ill. 1991), which involved a contractual agreement between the parties that allowed one party to exercise its subrogation rights against the defendants. *Parello*, 767 F. Supp. at 159. Moreover,

they argued, even if plaintiff's claim was assignable, Dennis could not have assigned her the claim, because he did not have standing to sue defendants. Therefore, defendants concluded, there was no legal basis for plaintiff's action.

On February 25, 2009, the trial court entered an order, without a written opinion, granting plaintiff's motion to reconsider and vacating its order of November 7, 2008. The trial court granted plaintiff leave to file an amended complaint.

### 3. Amended Complaint

On March 25, 2009, plaintiff filed an amended complaint which was similar to the initial complaint, but added the following allegations.

First, the amended complaint now alleged that Tyler and Dahms knew that Dennis drank liquor to excess and was an obsessive gambler. In addition, Tyler and Dahms "targeted" Dennis as a potential user of the gambling machines located in the tavern, knowing that Dennis would not be able to resist gambling, particularly when he consumed liquor.

Second, the amended complaint now alleged that Tyler and Dahms knew Dennis was married to plaintiff and that plaintiff disapproved of Dennis's drinking and gambling.

On April 22, 2009, defendants filed a motion to dismiss plaintiff's amended complaint pursuant to section 2-615 of the Code. Defendants' arguments in this motion to dismiss were substantially similar to their initial motion, namely, that plaintiff's alleged injuries were not proximately caused by defendants' claimed RICO violations and that plaintiff lacked standing to bring a civil RICO claim against defendants. Defendants added that they did not owe a duty to plaintiff for Dennis's "drinking or gambling problem[s]."

7

On June 11, 2009, plaintiff filed a response to defendants' motion to dismiss. Plaintiff argued that her injury consisting of financial loss to her marital estate through defendants' RICO violations was foreseeable because defendants knew that Dennis drank liquor to excess, was an obsessive gambler, would be unable to resist gambling after he consumed liquor and that plaintiff disapproved of Dennis's drinking and gambling. Furthermore, plaintiff argued that defendants knew that by disguising Dennis' gambling charges as food and beverage charges, they were receiving funds from plaintiff's marital estate, to which they were not entitled. Thus, plaintiff concluded, proximate cause exists and plaintiff has standing to bring her civil RICO claim against defendants.

In her reply to defendants' argument that defendants did not owe plaintiff a duty, plaintiff argued that it is not an issue of whether defendants owed her an duty, but that "defendants owed a duty not to commit a RICO violation."

On July 28, 2009, the trial court entered an order with a written opinion granting defendants' motion to dismiss plaintiff's complaint pursuant to section 2-615 of the Code. The trial court found that plaintiff failed to allege any facts to support a "direct relation" between defendants' conduct and her alleged damages. The trial court found that Dennis used the marital funds for gambling and that plaintiff suffered damages from Dennis's actions when he "voluntarily spent the funds." The trial court further found that plaintiff failed to cite any authority to support her assertion that defendants should be held responsible for Dennis's dissipation of the marital estate.

The trial court also found that plaintiff lacked standing to bring a civil RICO claim

8

against defendants under the facts of this case. The trial court found that the RICO statute does not provide for an assignment of a claim to third parties under the facts of this case. Moreover, even assuming the statute did provide for an assignment, plaintiff could not be assigned this right by Dennis, because Dennis did not have standing to bring a civil RICO claim against defendants since the financial losses suffered were caused by his own actions. The trial court concluded that plaintiff was indirectly harmed by defendant's conduct and thus lacked standing.

The trial court granted defendants' motion to dismiss plaintiff's amended complaint with prejudice. On August 25, 2009, plaintiff filed this timely appeal.

ANALYSIS

On appeal, plaintiff claims that the trial court erred in granting defendants' motion to dismiss her civil RICO claim when it found that: (1) defendants' RICO violation was not a proximate cause of plaintiff's injury; and (2) plaintiff lacked standing to bring a RICO action against defendants.

A. Standard of Review

A motion to dismiss under section 2-615 of the Code (735 ILCS 5/2-615 (West 2008)) challenges the legal sufficiency of the complaint by alleging defects on its face. *Young v. Bryco Arms*, 213 Ill. 2d 433, 440 (2004); *Wakulich v. Mraz*, 203 Ill. 2d 223, 228 (2003). We review *de novo* an order granting a section 2-615 motion to dismiss. *Young*, 213 Ill. 2d at 440; *Wakulich*, 203 Ill. 2d at 228.

The critical inquiry is whether the allegations in the complaint are sufficient to state a cause of action upon which relief may be granted. *Wakulich*, 203 Ill. 2d at 228. In making this

9

determination, all well-pleaded facts in the complaint, and all reasonable inferences that may be drawn from those facts, are taken as true. *Young*, 213 Ill. 2d at 441. In addition, we construe the allegations in the complaint in a light most favorable to plaintiff. *Young*, 213 Ill. 2d at 441.

### B. Civil Claims Under RICO

RICO provides a private cause of action for "[a]ny person injured in his [or her] business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c) (2006). Section 1962(c) further provides, in pertinent part, that it is "unlawful for any person employed by or associated with" an enterprise engaged in or affecting interstate or foreign commerce "to conduct or participate directly or indirectly, in the conduct of such enterprises's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c) (2006). The term "racketeering activity" is defined to include so-called predicate acts, including mail and wire fraud, which are alleged in the case at bar. See 18 U.S.C. § 1961(1) (2006).

To state a civil claim under RICO, the United States Supreme Court has held that a plaintiff must show that the alleged RICO violation "not only was a 'but for' cause of his injury, but was the proximate cause as well." *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268, 117 L. Ed. 2d 532, 544, 112 S. Ct. 1311, 1317 (1992). The United States Supreme Court employed the term " 'proximate cause' to label generically the judicial tools used to limit a person's responsibility for the consequences of that person's own acts." *Holmes*, 503 U.S. at 268, 117 L. Ed. 2d at 544, 112 S. Ct. at 1318. While the United States Supreme Court has interpreted the RICO statute broadly, the Court has limited the reach of civil RICO claims through the element of proximate cause. *Holmes*, 503 U.S. at 265-66, 117 L. Ed 2d at 542, 112 S. Ct. at

No. 1-09-2212

1316; *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 456, 164 L. Ed. 2d 720, 728, 126 S. Ct. 1991, 1996 (2006).

In *Holmes*, Securities Investor Protection Corporation (SIPC) brought a civil RICO claim against defendants who, SIPC alleged, conspired to manipulate stock prices. *Holmes*, 503 U.S. at 262, 117 L. Ed. 2d at 540-41, 112 S. Ct. at 1315. SIPC, a private nonprofit organization, had a statutory duty to reimburse customers when SIPC-member brokerage firms were unable to meet their financial obligations. *Holmes*, 503 U.S. at 261, 117 L. Ed. 2d at 540, 112 S. Ct. at 1314. When the defendants' stock manipulation was discovered, the stock prices collapsed, and the "decline caused [two SIPC-member] brokerage-dealers' financial difficulties in their eventual liquidation and SIPC's advance of nearly $13 million to cover their customers' claims." *Holmes*, 503 U.S. at 262-63, 117 L. Ed. 2d at 541, 112 S. Ct. at 1315. SIPC brought suit claiming that it was subrogated to the rights of its members' customers who did not purchase manipulated stocks. *Holmes*, 503 U.S. at 269, 117 L. Ed. 2d at 545, 112 S. Ct. at 1318.

The United States Supreme Court rejected SIPC's civil RICO claim, holding that it could not recover from defendants under a civil RICO violation because SIPC failed to establish that the RICO violation was the proximate cause of its injury. *Holmes*, 503 U.S. at 272-73, 117 L. Ed. 2d at 546-47, 112 S. Ct. at 1319-20. The United States Supreme Court evaluated the proximate cause requirement for bringing a civil RICO claim under common-law principles and required that there be "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes*, 503 U.S. at 268, 117 L. Ed. 2d. at 544, 112 S. Ct. at 1318; see also *Anza*, 547 U.S. at 457, 164 L. Ed. 2d at 729, 126 S. Ct. at 1996 (rejecting a civil RICO claim for failure to

11

establish *Holmes*' proximate cause requirement).

In applying that proximate cause standard, the Supreme Court in *Holmes* held that the defendants' RICO violation directly harmed only SIPC-member brokerage firms and that SIPC's injury was "purely contingent" on the brokers' injury. *Holmes*, 503 U.S. at 271, 117 L. Ed. 2d at 546, 112 S. Ct. at 1319. The Court concluded that SIPC's injury was "too remote" to satisfy RICO's direct relationship requirement. *Holmes*, 503 U.S. at 271, 117 L. Ed. 2d at 546, 112 S. Ct. at 1319.

In the case at bar, plaintiff claims that she suffered a direct injury because funds which she was entitled to through the marital estate were fraudulently billed to credit card companies, thereby incurring debt for which she was directly responsible.

Defendants do not contest whether their alleged conduct constitutes a RICO violation. Rather, defendants argued, and the trial court found, that plaintiff failed to show that defendants' alleged RICO violation was a proximate cause of her injury, and therefore, plaintiff cannot state a claim under RICO.

According to the amended complaint, Dennis "*obtain[ed] funds to gamble* on [the tavern's gambling] machines" through the use of his credit card at the tavern. Defendants, in an alleged violation of RICO, submitted to the credit card companies charges "falsely representing that [cash charges] represented charges for food and beverage service." Dennis then spent the funds that he received following the transaction with defendants when he deposited the funds in the tavern's gambling machines.

Based on the allegations in the amended complaint, the conduct directly responsible for

plaintiff's injury was Dennis's spending funds he obtained through the use of his credit card. The conduct that constituted the alleged RICO violation was defendants' fraudulent submission of Dennis's charges for cash as "food and beverage service" charges.

The distinction between the claimed injury and the alleged RICO violation is further emphasized by the federal Fifth Circuit's decision in *In re MasterCard International, Inc.*, 313 F.3d 257, 262 (5th Cir. 2002). In that case, plaintiffs brought a civil RICO claim against a credit card company alleging that the company "created and operate[d] a 'worldwide gambling enterprise' that facilitates" Internet gambling in violation of various state statutes. *MasterCard*, 313 F.3d at 260.

According to the facts in that case, an Internet gambler is permitted to use a credit card to purchase "credits" for gambling in an internet casino Web site. *MasterCard*, 313 F.3d at 260. After the purchase of the credits is completed, an Internet gambler may then place wagers in an Internet gambling casino. *MasterCard*, 313 F.3d at 260. The Fifth Circuit found that the credit card companies could not have violated state Internet gambling statutes, because the credit card companies "completed their transaction with the [p]laintiffs *before* any gambling occurred." (Emphasis in original.) *MasterCard*, 313 F.3d at 262.

Similarly, in the case at bar, defendants permitted Dennis to use his credit cards to obtain funds to gamble on the tavern's gambling machines. Next, defendants committed the alleged RICO violation by falsely labeling Dennis's transactions as "food and beverage service" and submitted those transactions to the credit card company. After the credit card transactions were complete, defendants forwarded the funds to Dennis. He then used those funds to gamble on the

No. 1-09-2212

tavern's gambling machines.

" 'The general tendency of the law, in regard to damages at least, is not to go beyond the first step.' " *Holmes*, 503 U.S. at 271-72, 117 L. Ed. 2d at 546, 112 S. Ct. at 1319-20, quoting *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 534, 74 L. Ed. 2d 723, 735, 103 S. Ct. 897, 906 (1983). This "general tendency" has been applied to the proximate cause requirement in determining whether a plaintiff was directly injured as the result of a civil RICO violation. See *Holmes*, 503 U.S. at 272-73, 117 L. Ed. 2d at 546-47, 112 S. Ct. at 1319-20; *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, ___, 170 L. Ed. 2d 1012, 1027-28, 128 S. Ct. 2131, 2144-45 (2008); *Anza*, 547 U.S. at 460-61, 164 L. Ed. 2d at 730, 126 S. Ct. at 1998.

Here, plaintiff's theory of causation extends beyond that "first step" and thus, her injury is too remote to satisfy proximate cause. Defendants' conduct of the alleged fraudulent billing scheme is separate from Dennis's conduct of using the funds which is the harm plaintiff claims she suffered. Based on the allegations in the amended complaint, plaintiff failed to establish the direct relationship required to bring a civil RICO claim. Thus, the trial court properly granted defendants' motion to dismiss based on plaintiff's failure to establish that the alleged RICO violation was a proximate cause of her injury.

Plaintiff further argues that under the traditional view of proximate cause, her injury was a foreseeable consequence of defendants' alleged RICO scheme, and therefore proximate cause exists. Specifically, plaintiff's amended complaint alleges that defendants knew Dennis drank liquor in excess, was an obsessive gambler, would be unable to resist gambling after he drank in

14

excess, and that plaintiff disapproved of Dennis's drinking and gambling. Furthermore, the amended complaint alleges that defendants knew that by disguising Dennis' gambling charges as food and beverage service charges, they were receiving funds from plaintiff's marital estate, to which they were not entitled. Plaintiff concludes that based on those facts, it was foreseeable that plaintiff would be injured by defendants' conduct and her injury was directly related to the alleged RICO violation. We do not find this argument persuasive.

In a recent United States Supreme Court case, *Hemi Group, LLC v. City of New York*, __ U.S. __, __ L. Ed 2d __, 130 S. Ct. 983 (2010), the United States Supreme Court rejected an argument that RICO's proximate cause requirement may turn on foreseeability rather than on a "direct relationship" between the alleged RICO violation and the injury. *Hemi Group, LLC*, __ U.S. at __, __ L. Ed 2d at __, 130 S. Ct. at 990. The United Supreme Court stated as follows:

"If this line of reasoning [that proximate cause turn on foreseeability rather than a 'direct relationship'] sounds familiar, it should. It is precisely the argument lodged against the majority opinion in *Anza*. There, the dissent criticized the majority's view for 'permit[ting] a defendant to evade liability for harms that are not only foreseeable, but the *intended* consequences of unlawful behavior.' [*Anza*, 547 U.S. at 470, 164 L. Ed. 2d at 737, 126 S.Ct. at 2004] (Thomas, J., concurring in part and dissenting in part). But the dissent there did not carry the day, and no one has asked us to revisit *Anza*.

The concepts of direct relationship and foreseeability are of course two of the 'many shapes [proximate cause] took at common law,' *Holmes*, [503 U.S. at

268, 117 L. Ed. 2d at 544, 112 S. Ct. at 1318]. Our precedents make clear that in the RICO context, the focus is on the directness of the relationship between the conduct and the harm. Indeed, *Anza* and *Holmes* never even mention the concept of foreseeability." *Hemi Group*, __ U.S. at __, __ L. Ed. 2d at __, 130 S. Ct. at 991.

As previously noted, in the case at bar, there is no direct relationship between the alleged RICO violation and plaintiff's injury to establish the proximate cause requirement. To date, the United States Supreme Court does not include foreseeability as part of the proximate cause analysis for a civil RICO claim. Accordingly, we decline to do so here.

Plaintiff's argument that there can be more than one proximate cause of an injury (*Nelson v. Union Wire Rope Corp.*, 31 Ill. 2d 69, 88 (1964)) is not applicable here. As noted, plaintiff's causation theory does not establish the requisite "direct relationship" requirement. Furthermore, plaintiff provides no alternative causation theory for us to consider that does establish a direct relationship between her injury and the alleged RICO violation as required under *Holmes* and its progeny. Plaintiff's injury here is just too remote.

For the foregoing reasons, the trial court properly granted defendant's motion to dismiss plaintiff's amended complaint for failure to establish a direct relationship between defendants' conduct and her alleged injury as required to bring a civil RICO claim.

Having determined that plaintiff cannot establish the proximate cause requirement for her injury, we do not need to determine whether plaintiff lacks standing to bring this claim.

CONCLUSION

For the forgoing reasons, we affirm the judgment of the circuit court of Cook County in dismissing plaintiff's amended complaint with prejudice for failure to state a claim under RICO. Even accepting all well-pleaded facts in the amended complaint as true and drawing all reasonable inferences from those facts, we find that the amended complaint fails to allege proximate cause, as defined by United States Supreme Court precedent for the federal RICO statute.

Affirmed.

J. GORDON and McBRIDE, JJ., concur.